Maurice Harold FIELDER et al., Plaintiffs,

v.

Max CLELAND, Administrator, Veterans Administration, et al., Defendants.

Civ. No. 7–70220.

United States District Court, E. D. Michigan, S. D.

May 23, 1977.

116

Alan R. Waterstone, Detroit, Mich., for plaintiffs.

Steven W. Rhodes, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

PHILIP PRATT, District Judge.

This action arises on the heels of passage of the Veterans Education and Employment Assistance Act of 1976, P.L. 94–502 (hereinafter, the "Act"). The plaintiffs are four individual students—veterans of the U.S. Armed Forces—attending the Detroit College of Business, and the College itself, who filed this suit challenging the constitutionality of two provisions of the recently enacted Act. On January 31, 1976, this Court entered a Temporary Restraining Order prohibiting the Veterans Administration from enforcing the two challenged provisions. That order expired on February 28, 1977 and the plaintiffs filed a motion for a preliminary injunction. Subsequently the defendants filed this motion to dismiss pursuant to F.R.C.P. 12(b)(6).

The Act challenged by the plaintiffs was enacted on October 15, 1976, to be effective as of December 1, 1976. The two specific

provisions which are challenged are extensions of the "85–15 rule"[1] and the "two year rule,"[2] which were embodied in the existing veterans' educational benefits legislation.

The 85–15 rule reads as follows:

"The Administrator shall not approve the enrollment of any eligible veteran, not already enrolled, in any course . . . . for any period during which the Administrator finds that more than 85 per centum of the students enrolled in the course are having all or part of their tuition, fees, or other charges paid to or for them by the educational institution, by the Veterans' Administration under this title and/or by grants from any Federal agency . . . ."

Previously the 85–15 requirement applied only to proprietary-for-profit or proprietary-not-for-profit educational institutions offering courses *not* leading to a standard college degree. The 1976 amendment extended this rule to apply to *any* such course.

The two-year rule requires that a course must have been in existence for two years before a veteran could receive benefits for that course when offered by a public college outside its own state or a private college outside its normal commuting area (i. e., through an extension or branch). Again, the rule existed under the prior law but was extended to cover all such educational institutions through the 1976 amendments.

The plaintiffs' complaint attacks these specific provisions of the Act on three constitutional grounds. First, it is alleged that the legislation denies equal protection in that it bears no rational basis to the purpose of the legislation. Second, it is alleged that the legislation deprives plaintiffs of a property interest, namely, their veteran's educational benefits' rights, without due process. Third, it is alleged that the legislation unconstitutionally delegates to the Veterans Administration authority to waive the contested restrictions.[3] The defend-

ants, however, contend that the plaintiffs have failed to state a valid claim of relief on any of these grounds and move to dismiss the complaint.

## DISCUSSION

■ Initially the Court notes the limitations on its jurisdiction over a matter which involves the approving of veteran's educational benefits. Section 211 of Title 38, United States Code, states:

"[E]xcept as provided in Sections 775, 784, and as to matters arising under chapter 37 of this title [none of which are relevant in the instant action], the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."

The federal courts have upheld the constitutionality of this statute, and it is readily apparent that this Court lacks jurisdiction to consider most issues relating to the grant or denial of veteran benefits. See *DeRodulfa v. United States*, 149 U.S.App.D.C. 154, 461 F.2d 1240 (1972), 18 A.L.R. FED. 890.

■ This Court does not, however, interpret this provision to foreclose its inquiry into the constitutionality of an amendment to the veteran's benefit legislation.

### I.

### EQUAL PROTECTION CLAIM

The plaintiffs in essence claim that application of the 85–15 rule and the two year rule discriminate against veterans who wish to take advantage of educational benefits, as against beneficiaries of other federal educational grants, such as Basic Educational

---

1. 38 U.S.C. § 1673(d).

2. 38 U.S.C. § 1789.

3. Plaintiffs recite other claims, which to this Court, are encompassed in the three grounds noted above.

Opportunity Grants (BEOG) and Supplemental Educational Opportunity Grants (SEOG). The latter grants are not subject to conditions similar to the 85–15 rule and two year rule which apply to veteran's educational benefits. This distinction, plaintiffs charge, is in violation of the equal protection clause of the Fifth Amendment.

█ The plaintiffs urge that the class discriminated against is a suspect classification or alternatively that the right involved is a fundamental right which requires that the government must show a compelling interest for this discrimination. This argument clearly must fail. There has been absolutely no showing that this group of veterans is identifiable as a discrete group or class of persons by any set of criteria. The mere fact that the plaintiffs (and the class they purport to represent) are veterans does not suffice to establish the group as a "suspect category."

█ Secondly, the interest involved being one for educational benefits, may be arguably construed as an economic or property interest. Again, however, there is no basis in federal law to support the classification of this interest as "fundamental." Rather, this is an economic benefit bestowed by the government upon certain citizens who meet specific qualifications. Distinctions made between classes of such recipients can only be challenged under the Equal Protection Clause if it is found, as a matter of law, that the unequal application of the provision is totally lacking in rationale justification, or is patently arbitrary.

The Supreme Court most recently restated this standard at length in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The plaintiffs there had challenged Maryland's application of its "maximum grant regulation" of benefits under the Aid to Families with Dependent Children program (AFDC) as violative of the Equal Protection Clause. Under that state regulation, although most families were provided aid in accordance with the standard of need, a ceiling of $250 a month was imposed on AFDC aid regardless of family size.

The Supreme Court upheld this classification, stating:

"In the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"

397 U.S. at 485, 90 S.Ct. at 1161.

The rational basis standard was applied despite the sensitivity of the issue (the administration of public welfare assistance) and despite significant legitimate criticism of the correctness of the state regulation (see dissenting opinions of Justices Douglas and Marshall).

The plaintiffs in the case at bar premise their constitutional arguments on two incorrect assumptions: first, they view the "rational basis" determination as a "factual issue;" secondly, they do not distinguish between an arguably imperfect statutory classification and one that is totally lacking in rational justification.

█ The plaintiffs' primary response to this aspect of defendants' motion to dismiss is that through their depositions of several university-level educators, they have made a prima facie showing that the 85–15 rule and two year rule, as applied to standard degree institutions, is totally irrational. This, they contend, establishes a "factual controversy" which precludes judgment on defendants' motion to dismiss. By this assertion it is apparent that the plaintiffs fail to comprehend the purely *legal* nature of a "rational basis determination" on a motion to dismiss. Thus, in this case it is this Court's function to determine if the extended application of these two rules by the 1976 Act comports with the rational basis standard. In making this determination the Court may consider the plain language of the law, its stated purpose, relevant legislative history and even the sound legal argument of counsel. It may *not,* however,

consider the opinions or conclusions of select individuals—be they college administrators or university presidents. The "rationality" or lack thereof of a statute is not bolstered by lay or expert opinion.

The stated purpose of Congress in adopting this extension of both rules was to curb apparent abuses of the Veterans Administration education program. It was the Veterans Administration's conclusion, after considerable investigation, that numerous programs of dubious or marginal appeal or benefit to the college-age population in general were being established to attract unwary veterans. The Veterans Administration's position was that:

"if an institution of higher learning cannot attract sufficient nonveteran and nonsubsidized students to its programs, it presents a great potential for abuse of our G.I. educational programs."

*See* Senate Report No. 94–1243, 94th Congress, 2d Sess. at p. 89, U.S.Code Cong. & Admin.News 1976, pp. 5241, 5311.

■ Clearly the Congress and the Veterans Administration have a legitimate interest in assuring that veteran's educational benefits are neither wasted nor abused. Therefore, if the legislation, and the classification made therein, can be seen to be rationally related to such legitimate purpose, it is consistent with the Equal Protection Clause.

The Senate Report clearly relates Congress' intention in this regard:

"While reviewing the legislative history and intent of this section during consideration of the 1974 GI bill amendments, it became evident to the Committee that Congress was concerned about schools which developed courses specifically designed for those veterans with available Federal moneys to purchase such courses. At the time that the section was originally enacted, the veterans educational assistance program was, of course, the prime (if not sole) source of Federal funds which could be utilized by students who enrolled in such courses. The ready availability of these funds obviously served as a strong incentive to some

schools to enroll eligible veterans. *The requirement of a minimum enrollment of students not wholly or partially subsidized by the Veterans' Administration was a way of protecting veterans by allowing the free market mechanism to operate.*

"*The price of the course was also required to respond to the general demands of the open market as well as to those with available Federal moneys to spend. A minimal number of nonveterans were required to find the course worthwhile and valuable or the payment of Federal funds to veterans who enrolled would not be authorized.*" (Emphasis added). Senate Report, at p. 88, U.S.Code Cong. & Admin.News 1976, p. 5310.

■ To the extent that these two rules now apply to veterans attending all schools and do not apply to BEOG and SEOG grantees, this distinction relates to the conclusion that abuses were prevalent in the veteran's educational benefits program.

The plaintiffs argue that an exhaustive investigation might have unearthed similar abuses in the BEOG and SEOG programs and that if abuses were found to exist in veteran's programs, they could be cured by stiffer accreditation rules, rather than these mechanistic and general formulas, which they contend result in tremendous administrative overkill to cure a relatively minuscule problem.

It is in this respect that the plaintiffs confuse patently arbitrary and irrational legislation with imperfect legislation. Valid criticism can be directed against the subject legislation on a number of counts: it is mechanistic, it does apparently involve an extraordinary amount of administrative paperwork, it does not present overwhelmingly convincing grounds for using the 85–15 or two year figures, and it can be readily argued that an accreditation standard would be more flexible and sensitive to the problem. But these are, at most, imperfections in the legislation. They do not compel the conclusion that the legislation is patently arbitrary or totally irrational in its basis. As the Supreme Court concluded in *Dan-*

*dridge v. Williams, supra,* at 487, 90 S.Ct. at 1162:

"We do not decide today that the . . regulation is wise, that it best fulfills the relevant social and economic objectives that [the state] might ideally espouse or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social and even philosophical problems presented by [such programs] are not the business of this Court."

For these reasons the Court finds without merit plaintiffs' equal protection claim.

## II.

### DUE PROCESS ARGUMENT

Plaintiffs' second claim is that they have vested property interests in their rights to receive veteran's benefits,[4] and that the 85–15 and two year rules as applied against their enrollment at Detroit College of Business effectively deprive them of these rights. Defendants contend (1) that these veterans have no "vested property rights" to receive veteran's benefits, (2) that they have not been deprived of these rights by the 1976 Act, and (3) that any limitations or their exercise of these rights were made consistently with due process of law.

Defendants' argument that there is no vested property right is based primarily on statements in *Milliken v. Gleason,* 332 F.2d 122 (1st Cir. 1964), *cert. den.,* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965), and its progeny. The court there said that "veterans' benefits [were] gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under any conditions Congress may impose." A closer reading of that case indicates, however, that the court found the claim to be unreviewable under 38 U.S.C.

§ 211; the subsequent statements thus become no more than dicta.

■ Moreover, this Court believes such statements do not comport with the federal view regarding property rights after *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Rather, the "rights" of prospective benefit recipients are brought into proper perspective in *DeRodulfa v. United States,* 149 U.S.App.D.C. 154, 461 F.2d 1240, 1256 (1972), *cert. den.,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972) where the court related:

" 'To characterize an act of Congress as conferring a "public benefit" does not, of course, immunize it from scrutiny under the Fifth Amendment,' nor does it license Congress to 'exercise its power to modify the statutory scheme free of all constitutional restraint.' The interest of a potential recipient may well be 'of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause.' That interest may also command the respect which due process of law enjoins even in matters purely procedural in character.

"But due process in this area does not mean inexorably that a recipient has 'such a right in benefit payments as would make every defeasance of "accrued" interests' a violation. 'Nor,' of course, 'does an expectation interest in public benefits confer a contractual right to receive the expected amounts.' And while '[i]t may be realistic today to regard welfare entitlements as more like "property" than a "gratuity," ' 'the analogy drawn . . . between social welfare and "property" . . . cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.' "

*See Richardson v. Belcher,* 404 U.S. 78, 80–81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).[5]

---

4. This claim is strictly limited to the individual plaintiffs. The plaintiff college concedes that it has no direct vested interest or right in providing educational services to veterans who qualify for G.I. benefits.

5. Plaintiffs cannot legitimately contend there exists any formal *contractual* entitlement to such benefits which would impose the constitutional limitation of the Contracts Clause or

Thus, while these educational benefits might be described as a "property interest," the courts have held that defeasance of such entitlements or circumscription of their uses can be effected through subsequent Congressional legislation if that process comports with procedural and substantive due process.

▆ Both procedural and substantive due process are satisfied in this case. Extensive public hearings were held prior to enactment of the 1976 Act. The Senate Report, *supra,* reflects the presence at those hearings of many opponents of the bill as well as proponents. Among the former group were several educational associations and veteran's groups which opposed this provision of the legislation for much the same reasons as given here by these plaintiffs. Substantive due process requires that the legislation be rationally related to a legitimate purpose. This was discussed, *infra,* and the Court concludes substantive due process was met.

The Court would also note that the effect of this law is not to deprive plaintiffs of educational benefits absolutely. It does restrict the number of educational institutions where such benefits may be utilized and conditions the type of courses for which they are eligible under the program. The limitations imposed on individual plaintiffs by this Act are not substantially different from those that would likely have been imposed under an accreditation-based system.

For these reasons the Court must also reject plaintiffs' claim of deprivation of a vested property right in derogation of due process of law.

### III.

### UNCONSTITUTIONAL DELEGATION

▆ To a certain degree the new law does recognize that the 85–15 rule is mechanistic and to provide some measure of flexibility, it states that:

"The Administrator may waive the requirements of this subsection, in whole or in part, if the Administrator determines it to be in the interest of the eligible veteran and the Federal Government."[6]

The plaintiffs' third claim is that this waiver provision is an unconstitutional delegation of legislative authority to an executive agency, namely, the Veterans Administration. This argument is also without merit. Similar delegable discretionary standards have been consistently upheld by the courts. *See National Broadcasting Co. v. United States,* 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).

To the extent the record or oral argument reflect legal grounds not encompassed in these claims, the Court also finds them to be without merit. For these reasons the Court holds that the plaintiffs have failed to state a valid constitutional claim against the legislation in question reviewable by this Court and hereby grants defendants' motion to dismiss.

IT IS SO ORDERED.

---

Veterans Administration legislation. The individual plaintiffs' enlistment contracts contained no provision relating to veteran's educational benefits and this Court will not read such an understanding into the formal contract.

**6.** 38 U.S.C. § 1673(d).