Richard ROLLE et al.

v.

Max CLELAND, Administrator, Veterans
Administration, et al.

No. 77–128.

United States District Court,
D. Rhode Island.

Aug. 3, 1977.

William J. McGair, Christopher T. DelSesto, Jr., Providence, R. I., for plaintiffs.

Everett C. Sammartino, Asst. U. S. Atty., R. I., Providence, R. I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

This action is a constitutional challenge to the validity of the Veterans' Education and Employment Assistance Act of 1976, Pub.L. 94–502, § 205(4), 90 Stat. 2383, *amending* 38 U.S.C. § 1673(d) (1970) (hereinafter referred to as "the Act"). The Act extends the reach of the so-called "85–15" rule.[1] Under this rule, veterans have long been barred from receiving veterans benefits for enrollment in courses in non-degree granting institutions in which 85% of the students are other veterans. Under the Act, the rule is extended to cover degree-granting colleges and to include, in the calculation of the 85%, non-veterans who have all or part of their tuition paid by any federal agency. The Veterans' Administrator is given authority to waive the 85–15 rule in whole or part, "in the interest of the eligible veteran and the Federal Government."

■ The provisions of the Act are challenged by individual veterans, otherwise eligible for veterans' benefits, who are barred by the Act from enrolling in the courses that they desire at Johnson and Wales College.[2] Joining them as plaintiff is Johnson

---

1. The Act provides:

(d) The Administrator shall not approve the enrollment of *any eligible veteran, not already enrolled,* in any course (other than one offered pursuant to subchapter V, any farm cooperative training course, or any course described in section 1789(b)(6) of this title) for any period during which the Administrator finds that more than 85 per centum of the students enrolled in the course are having all or part of their tuition, fees, or others charges paid to or for them by the educational institution, by the Veterans' Administra-

tion under this title and/or by grants from any Federal agency. The Administrator may waive the requirements of this subsection, in whole or in part, if the Administrator determines it to be in the interest of the eligible veteran and the Federal Government.

2. The complaint names fourteen individual plaintiffs. Of this number, seven are previous enrollees in courses at Johnson and Wales College who were denied permission to re-enroll in these courses after the effective date of the Act. At the Court's suggestion, in order to simplify the issues in this case, these seven

and Wales, an accredited non-profit four-year college offering baccalaureate and associate degrees and approved for veterans' benefits by the Veterans Administration.[3]

Plaintiffs sought and received a temporary order on March 21, 1977, restraining defendant Veterans Administration officials from enforcing the provisions of the Act. The temporary restraining order was extended by the Court for such time as was necessary to hear and decide plaintiffs' application for a preliminary injunction and defendants' motion to dismiss. An evidentiary hearing was held on April 25–26, 1977 and the case is now ready for decision.

Plaintiffs' attack upon the validity of the Act is based upon a claim that the Act violates the equal protection component of the Due Process Clause of the Fifth Amendment, see Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). As plaintiffs point out, under the Act challenged here, veterans are denied permission to enroll in courses when 85% of the students in that course are government-funded students. Plaintiffs argue that veterans seeking to use their benefits in already-saturated courses are invidiously disadvantaged when compared to two other groups: those veterans seeking to enroll in not-yet saturated courses, and those non-veteran, but government-funded students, who are not burdened by the 85–15 limitation. Plaintiffs contend that this different treatment is irrational, arbitrary, and capricious.

Defendants respond that the obvious purpose of the 85–15 requirement is to discourage establishment of educational programs of dubious value for the sole purpose of attracting unwary veterans with federal money to spend. See S.Rep.No. 94–1243, 94th Cong., 2d Sess. 50, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 5241, 5272.

In Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), an equal protection case dealing with the exclusion of conscientious objectors from receipt of veterans' educational benefits, the Court set down the appropriate standard by which classifications such as that established by the Act challenged here are to be judged:

> [a] classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Id. at 374–75, 94 S.Ct. at 1169 (citations omitted).[4]

Johnson and Wales has standing to challenge the validity of the Act.

---

**3.** In view of the Court's disposition of this case, the Court assumes, without deciding, that applied for and received waivers of the Act's requirements from the Veterans' administrator. They are therefore dismissed as plaintiffs. Their dismissal removes from this case any claim that the Act deprives already-enrolled beneficiaries of vested educational benefits. Obviously, such a claim cannot be raised by the remaining seven plaintiffs, and the Court does not purport to resolve the questions it raises. The remaining plaintiffs have never been enrolled in the courses they now seek at Johnson and Wales. They remain free to seek approval for enrollment in any course that meets the 85–15 requirement at Johnson and Wales or any other approved school, or to seek a waiver of the 85–15 requirement. It cannot be said that they have a vested right to use their veterans' benefits in any one particular course, any more than a food stamp recipient, for instance, would have a vested right to use his or her stamps to purchase an item that is proscribed under the food stamp program when the recipient begins to receive food stamp benefits.

**4.** The Court is of the opinion that this language describes the "minimal rationality" level of equal protection scrutiny, see generally G. Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972), and that minimal scrutiny is the appropriate standard of review for the statute here challenged. The Court rejects plaintiffs' contention that the challenged classification must be subject to strictest scrutiny and upheld only if justified by a compelling governmental purpose. Such scrutiny is reserved for classifications that abridge "fundamental" rights or create "suspect" categories. See Johnson v. Robison, 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Remedial legislation such as the Act, that affects levels of educational benefits but falls short of complete denial of educational opportunity cannot be considered as abridging fundamental rights. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 37–39, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Nor are

■ There can be no doubt that under this standard, the distinction between veterans seeking to enroll in courses with less than 85% government-assisted students and those seeking to enroll in courses with 85% or more government assisted students is a rational one. As indicated, the 85–15 rule is "intended to allow the free market mechanism to prove the worth of the course offered, by requiring that it respond to the general dictates of an open market as well as to those with available Federal moneys to spend." S.Rep.No. 94–1243, 94th Cong., 2d Sess. 50, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5241–5272. The Court cannot say that the popularity of any given course with non-federally assisted students is an unreliable indicator of the worth of the course. The 85–15 requirement may be an imperfect means of achieving the desired result and may indeed preclude some veterans from receiving benefits for attendance at some outstanding courses while providing benefits for attendance at others that are truly abysmal. But the test is not how well the challenged scheme works. That is a determination for Congress to make. This Court's inquiry is at an end if it determines that the classification is not so irrational that it *cannot* work toward achieving its expressed goal. *See City of Charlotte v. Local 660, International Association of Firefighters*, 426 U.S. 283, 287–289, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976) and cases cited therein. This is a legal rather than a factual determination to be made by examination of the plain language of the challenged law, its legislative history, and argument of counsel. *See Mathews v. Lucas*, 427 U.S. 495, 509–510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).[5] Nothing put forward by plaintiffs undermines the Court's conclusion that the challenged classification bears a rational relationship to the end sought. *Accord, Fielder v. Cleland*, 433 F.Supp. 115 (E.D.Mich. 1977).[6]

plaintiffs part of a suspect class. *Cf. Johnson v. Robison*, 415 U.S. at 375 n. 14, 94 S.Ct. 1160 and cases cited therein (conscientious objectors denied veterans benefits are not a suspect class). *Accord, Francis v. Cleland*, 433 F.Supp. 605, at 617 (D.S.D.1977).

Nor is this Court able to concur with the conclusion reached by Judge Bogue in *Francis v. Cleland* that the "intermediate" level of scrutiny is the appropriate standard of review in this case. Accepting *arguendo* the premise in *Francis* that the Supreme Court's standards of review in equal protection cases have become more flexible, *see, e. g., Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31, this Court is unable to perceive how the challenged legislation, which does not deny veterans' benefits totally to any veteran but merely regulates the courses in which they may be used and which moreover permits exceptions from the rule to be made in individual cases, encroaches on personal rights so as to justify departure from the Court's traditional deference to the primacy of the legislature in the realm of policy choices. *See, e. g., City of Charlotte v. Local 660, Int'l Ass'n of Firefighters*, 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976).

5. At the evidentiary hearing that was held in this case, plaintiffs offered expert testimony that the challenged classification was irrational and that Johnson and Wales offered acceptable courses unavailable elsewhere in the state. None of this evidence is relevant to the legal issue of the rationality of the 85–15 rule, and the Court does not consider it in deciding this case. In deciding this case in the context of defendant's motion to dismiss, the Court accepts as true every factual allegation made in the complaint.

6. The Court has considered plaintiffs' argument that it is not rational to include recipients of other types of government assistance in determining whether the requirements of the 85–15 rule have been met since the purpose of the rule is to discourage the development of "veterans diploma mills" catering exclusively to veterans. This argument takes too narrow a view of the purpose of the 85–15 rule, which is designed not merely to prevent the development of schools catering exclusively to veterans by limiting the proportion of veterans who may enroll in any course, but to test the quality and cost of courses of study which the federal government will support by requiring them to attract a minimal number of students who are willing to pay their own way, without federal assistance, of whatever kind. *See* S.Rep.No. 94–1243, 94th Cong., 2d Sess. 89, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5241, 5311.

Nor can the Court find any constitutional significance in the fact there is no 85–15 rule for recipients of other types of federal tuition assistance or in the fact that certain educational programs for veterans are excluded from the 85–15 rule by the Act. Abuses of the magnitude of the "veterans mills" may not exist with respect to other groups of recipients or to the excluded programs; or Congress may simply have chosen to adopt a one-step-at-a-time remedial approach to whatever problems exist.

It is unfortunate, but it is necessarily true and constitutionally permissible that "any line [that is drawn in pursuit of a legitimate goal] must produce some harsh and apparently arbitrary consequences" and "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line," *Mathews v. Diaz,* 426 U.S. 67, 85, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976). But it is precisely these types of policy choices that must be left to the legislature rather than the courts.

For the foregoing reasons, the temporary restraining order entered by this Court on March 18, 1977 is dissolved, plaintiffs' application for a preliminary injunction is denied, and the complaint is dismissed for failure to state a claim on which relief may be granted.

This is a decision for Congress and not for this Court to make. *See, e. g., Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

The Court must also reject the argument that Congress is not permitted to distinguish between previously enrolled veterans and new enrollees in extending the 85–15 rule to degree-granting colleges. Application of the 85–15 rule to veterans already enrolled in a particular course of study and who would thus be forced to change courses would work a significantly greater hardship upon them than upon new enrollees and might itself raise due process problems.

Finally, the Court must reject plaintiffs' claims that the challenged statute is void on procedural due process grounds. It is not true, as plaintiffs contend, that the Administrator has decided not to grant any 85–15 waivers. Several plaintiffs in this case have received individual waivers. The Administrator has merely decided that he will not grant course-wide waivers for courses with less than 15% enrollment composed of individuals not in receipt of government assistance. *See* DVB Circular 20–76–84, Change 1, January 7, 1977. It is of no significance that individual waivers must be requested by the school on behalf of the veteran rather than by the veteran personally.