WAYNE STATE UNIVERSITY, a constitutional body corporate and William Burl Thomas Neal and David Wright, Jr., Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Max CLELAND, Administrator, Veterans Administration, Washington, D. C., A. H. Thornton, Director, Education and Rehabilitation Service, Veterans Administration, Washington, D. C., and Frank J. Kilcullen, Jr., Director, Veterans Administration, Regional Office, Detroit, Michigan, Individually and in their official capacities, Defendants.

Civ. A. No. 7–70973.

United States District Court, E. D. Michigan, S. D.

Sept. 27, 1977.

As Amended Sept. 28, 1977.

See also, D.C., 440 F.Supp. 806.

**812**

Richard A. Fulton, C. William Tayler and Kenneth Ingram, Sachs, Greenebaum & Tayler, Washington, D. C., and Bryan H. Higgins, Detroit, Mich., for plaintiff Wayne State University.

Gordon A. Gregory, Nancy Jean Van Lopik, Gregory, Van Lopik & Korney, Detroit, Mich., for plaintiffs Neal, Wright, Campbell, Green and Torando.

James K. Robinson, U. S. Atty., and Charles Kalil, Asst. U. S. Atty., Detroit, Mich., for defendants.

Richard E. Verville, Washington, D. C., for American Council on Education amicus curiae.

KEITH, Chief Judge.

This action is brought pursuant to 28 U.S.C. §§ 1331, 1361, 2201, and 2202, and under the First, Fifth and Tenth Amendments to the Constitution. Plaintiffs seek to restrain the defendants from enforcing certain Veterans' Administration regulations and a DVB circular which promulgate measurement standards for full-time courses at institutions of higher learning for veterans who receive educational assistance allowance benefits pursuant to Title 38, United States Code, chapters 31, 34 and 36.

In an Opinion and Order of August 17, 1977, 440 F.Supp. at 806 this court denied defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, holding that a federal district court has jurisdiction to decide if the Veterans' Administrator has exceeded his authority or violated plaintiffs' constitutional rights in the promulgation and enforcement of generally applicable regulations. Thereupon the parties, pursuant to agreement, filed Cross-Motions for Summary Judgment. They have also stipulated that this action involves no genuine issue as to any material fact. Upon a review of the pleadings, affidavits, and exhibits filed herein, it does appear that this action is appropriate for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Briefs having been filed in support of and in response to the Motions for Summary Judgment, the court having heard oral argument in this case on April 27, 1977, and August 8, 1977, and the American Council on Education having filed a brief and appeared as *amicus curiae* in this action, the court is fully advised in the premises.

■ The defendants have moved in their Motion for Summary Judgment for an Order dismissing the University and non-veteran plaintiffs as parties to this action. This request will be denied as to the University and granted as to the non-veteran individual plaintiffs. Pursuant to V.A. regulations and a DVB circular, the V.A. notified the University of its decision not to accept the self-certification of the University as to what constitutes a full-time program in the College of Lifelong Learning for the purposes of education assistance allowance benefits. Affidavit of Harold Donaldson, dated April 21, 1977, and letters attached. Such action gives rise to a genuine case or controversy between the University and the defendants within the meaning of Article III of the Constitution. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976). However, there is no controversy between these defendants and the non-veteran plaintiffs—Eleanor Green and Vicki Torando—

only a speculative fear on the part of these plaintiffs that if the V.A. implements its regulations, then the veteran students in the Weekend College Program may withdraw, and the Program may cease to exist, at which point these plaintiffs would be injured.[1] But their interest in the educational assistance allowance program cannot even arguably be said to come within the zone of interests protected by veterans' benefits legislation. *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ This action will also be dismissed as to Robert B. Campbell. Though a veteran, Mr. Campbell is not now receiving veterans educational assistance allowance benefits, and is enrolled as a part-time student at the Weekend College Program of the CLL. He does not allege any legal wrong as a result of the termination of his educational assistance allowance benefits, and asserts that he

---

1. The Veterans' Education Assistance Allowance Program is administered by the Veterans' Administrator pursuant to 38 U.S.C.A. § 1681(a) *et seq.* (Supp.1977), which provides:

(a) The administrator shall, in accordance with the applicable provisions of this section and chapter 36 of this title, pay to each eligible veteran who is pursuing a program of education under this chapter an educational assistance allowance to meet, in part, the expenses of the veteran's subsistence, tuition, fees, supplies, books, equipment, and other educational costs.

Congress did not intend by these allowances to completely subsidize the veteran's educational costs.

The committee [House Veterans' Affairs Committee] emphasizes that, as in the case of the Veterans' Readjustment Act of 1952 (for the Korean conflict veterans), it is not the intention of this legislation to establish a program which completely subsidizes the cost of a veteran's educational program, as well as his living costs. This legislation is designed as an aid program and it is expected that in many cases the veteran will be required to make a contribution to the cost of his own education program. It is believed that the veteran will maintain a greater interest in the use made of the funds provided by this bill, if he is required to make a contribution from his own resources.

H.R. No. 1258, 89th Cong., 2nd Sess., 1966 *U.S.Code Cong. & Admin.News,* pp. 1888, 1890.

In the instant case, if the challenged regulations were implemented and enforced by the V.A., eligible veteran students would still obtain 66% of their full-time benefits. Def. Supp. Br. at 7. These benefits would be more than adequate to pay for tuition at the College of Lifelong Learning, and for books and other related expenses. For example, had these regulations been in effect for the academic quarter of March 28, 1977 to June 22, 1977, an eligible veteran with one dependent would have received $608.30 in benefits, and an eligible veteran with a wife and six children would have received $903.00 in benefits. Affidavit of Andrew H. Thornton, Director of Education and Rehabilitation Services, V.A., dated April 22, 1977. These benefits are far in excess of the $310 per quarter charged to freshmen and sophomores in the Weekend College Program or the $341.00 per quarter charged to juniors and seniors carrying twelve credit hours. Pls. Exhibit 3. In light of the above, and considering the fact that the amount of money a veteran receives as an educational assistance allowance does not depend on his economic need, but only on the type of program he is pursuing and the number of his dependents, 38 U.S.C.A. § 1682 (Supp.1977), it does not appear that implementation of the challenged regulations need result in a mass withdrawal of veteran students from the Weekend College Program at Wayne State University.

will be injured by the V.A.'s actions, if at all, only if large numbers of full-time veteran students withdraw from the CLL if the Weekend College Program is curtailed by Wayne State University. Affidavit of Robert B. Campbell. The court is therefore of the opinion that this plaintiff has not stated an actual case or controversy between himself and the defendants.

■ In their Complaint the individual plaintiffs sought to bring this action as a class action on behalf of all students in the CLL who have been, are, or will be enrolled in the College of Lifelong Learning. Although neither party has moved pursuant to Rule 23 of the Federal Rules of Civil Procedure for an Order certifying the class, the court has an independent obligation pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure to determine "as soon as practicable after the commencement of an action brought as a class action" whether the action may be so maintained. *Senter v. General Motors, supra;* 7A Wright & Miller, *Federal Practice & Procedure: Civil* § 1785 n. 47 and cases cited therein (1972, Supp.1976); *contra, Yulio v. Moore-McCormack Lines, Inc.,* 387 F.Supp. 872 (S.D.N.Y.1975). Having dismissed this action as to the non-veteran students in the Weekend College Program of the CLL, the court will not certify the class requested by the plaintiffs in their Complaint. However, the plaintiffs also requested the certification as a sub-class of all full-time veteran students enrolled in the Weekend College Program who are otherwise eligible to receive full-time veterans' educational assistance allowance benefits under Title 38 United States Code, Chapters 31, 34, and 36, of which plaintiffs Neal and Wright are representatives. There are questions of law and fact common to this class, joinder of all members of this class would be impracticable, it appears that the claims of the named plaintiffs are representative of the class, and that the named plaintiffs will adequately represent the interests of the class. In addition, the conduct of the defendants in promulgating and enforcing the challenged regulations and circular are generally applicable to members of the class.

Therefore, the court will certify this action as a class action pursuant to Rule 23(b)(2) with respect to this class. Rule 23(c)(3), Fed.R.Civ.Pro.

## II

VA Regulation 14272(D) 38 C.F.R. § 21.-4272(d), as amended, 41 Fed.Reg. 14398 (1976), provides:

(d) Courses; Measurement Equivalency. Where a term is not a standard semester or quarter as defined in [38 C.F.R.] § 21.4200(b), the equivalent for full-time training will be measured by multiplying the credits to be earned in the session by 18 if credit is granted in semester hours, or by 12 if credit is granted in quarters, and dividing the product by the number of whole weeks in the session. The resulting quotient will be the semester hours on which educational assistance allowance will be computed using the criteria of [38 C.F.R.] § 21.4270 proper or the criteria of footnote 3 to that section, whichever is appropriate. In determining whole weeks for this formula, 3 days or less will be disregarded and 4 days or more will be considered a full week. In no case will a course be measured as full-time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full time at the school) are required.

VA Regulation 14200(G), 38 C.F.R. § 21.-4200(g) (1976), reads as follows:

(g) *Standard class session.* The term means the amount of time a student is required, in a regular quarter or semester, to spend in class per week for one quarter or one semester hour of credit. Normally a standard class session is not less than 1 hour (or 50-minute period) of academic instruction, 2 hours of laboratory training, or 3 hours of workshop training.

Department of Veterans' Benefits (DVB) Circular 20–77–16, dated February 9, 1977, revised by Change 1, 4–21–77, set out at Footnote 7 of plaintiffs' Motion for Summary Judgment, provides in pertinent part:

1. Effective October 26, 1976, VA Regulation 14272(D) was amended to include: In no case will a course be measured as full time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full time at the school) are required. Likewise, a proportionate number of weekly standard class sessions is required to support an assignment of part-time training. In effect, VA Regulation 14200(g) defines the term 'standard class session' as to the amount of time a student is scheduled in the school's standard length term to spend in class per week for one quarter or one semester hour of credit. Normally, but not necessarily, a standard class session is not less than 1 hour (or 50 minute period) of academic instruction, 2 hours of laboratory training or 3 hours of workshop. (It follows that the length of a standard class session is determined by the school's own academic practices which establish a normal length, not an average length, for each type of class session based on the majority of the school's regularly scheduled programs. Generally, special class schedules for independent study programs, so-called accelerated programs, and night programs should not be considered in determining the length of a standard class session.)

a. In addition to meeting the credit-hour measurement of VA Regulation 14270(c), a course must also schedule a sufficient number of contact hours to support the assigned training time. Weekly contact hours, excluding any break periods, should be used to determine training time measurement if individual class periods are longer than a standard class session. Equivalent standard class sessions for measurement can be obtained by dividing the number of weekly contact hours by the length of a standard class session.

\* \* \* \* \* \*

2. The above principle applies to all collegiate undergraduate courses measured on a credit-hour basis regardless of whether they are offered pursuant to a standard semester or standard quarter system. Accordingly, measurement of all applicable courses for academic terms beginning on or after October 26, 1976, are subject to this regulatory provision. Where applicable, overpayments should be created from the beginning of the first term after school officials are put on notice, as provided in par. 3 and school liability considered. (Notwithstanding the effective date of this regulatory amendment, this change merely reflects a clarification of longstanding Veterans Administration measurement policy rather than new policy.) (Note: This principal does not apply to courses that are specifically dealt with in other VA Regulations in a manner which would obviously conflict with its literal application. Consequently, in addition to Graduate Instruction (VA Regulation 14273), Independent Study (VA Regulation 14280), Work Experience Courses (VA Regulation 14265), and Cooperative Courses (VA Regulation 14233(A)) are not subject to this provision.)

3. Although IHL's should still certify credit hours for enrollments, the VA must be able to determine the number of standard class sessions which are scheduled if this may result in reduced training time. Accordingly, all IHL's should be put on notice that when the equivalent of a standard class session per week for each credit hour granted is not scheduled, the enrollment certification should also report the number of such weekly sessions or the equivalent contact time. This may even require the need to differentiate between academic and laboratory instruction if clock hours are merely reported instead of standard class sessions (e. g., a chemistry course may be given for 3 credits, involve 4 hours of attendance, but yet should only be reported as entailing 3 standard class sessions if there is a 2 hour weekly lab). Any courses which are exempt pursuant to paragraph 2 should be clearly identified as such when weekly sessions or the equivalent contact time is to be reported.

The school year of the Weekend College Program is divided into four quarters consisting of eleven weeks each. Classes are held for ten of the eleven weeks, and examinations are held during the final week of the quarter. Students are required to attend classes in three quarters of each school year. During each of the first three years of his/her enrollment in the Program, a full-time student will earn twelve course credits, divided between a four credit workshop course, a four credit open circuit televised lecture course, and a four credit weekend conference course. The workshop course requires regular classroom instruction and meets four hours each week throughout the quarter. The open circuit television course requires five 30-minute TV lectures each week supplemented by required writings and meetings with instructors. The conference course consists of two weekend conferences each quarter. Each weekend conference lasts for 1000 minutes.

The challenged regulations, taken together and as defendants have attempted to enforce and implement them, create two requirements for courses for which veteran students can receive full-time educational assistance allowance benefits. First, in the case of a four credit course, there must be a total of 2,000 minutes of classroom "contact" time in the quarter. Secondly, there must be 200 minutes of classroom time each week for each four credit course, since a standard class session has been defined by the V.A. to be a fifty minute classroom instruction period. Thus, a student who was enrolled in a four credit course must spend the equivalent of four fifty minute periods in class each week for ten weeks to receive full-time educational assistance benefits each week during the quarter. Only the four credit workshop of the Weekend College Program course meets both of these criteria. The V.A. has determined that the open circuit television course, which meets for 150 minutes per week and 1500 minutes per quarter, does not maintain sufficient contact time each week or each quarter to support the four credits awarded for completion of the course. The V.A. has also determined that the weekend conference course does not maintain sufficient contact time each week, although it does maintain sufficient contact time over the quarter, to support the award of four credits for completion of these courses.

■ It is plaintiffs' contention that Congress has by stature provided that a full-time course of study at an institution of higher learning shall be defined by the institution, and not the Veterans' Administrator, and that a veteran student who is paying full tuition for a full-time course of study at an accredited institution is entitled to receive full-time educational assistance allowance benefits. The defendants argue that the four credit open circuit television course and the four credit weekend conference course of the Weekend College Program are not "full-time" courses within the meaning of 38 U.S.C. § 1788(a)(4) because the students enrolled in these courses spend what the Administrator has determined to be an insufficient amount of time in the classroom each week and each quarter to justify the credits awarded by the University for completion of these courses. Since, in the Administrator's opinion, students enrolled in the Weekend College Program are part-time students (many hold full-time jobs in addition to their school work), they are not entitled to full-time educational allowances. The question before the court is whether the Administrator has the authority to exercise his opinion and make a determination independent of that made by the University as to what constitutes a full-time course for the purposes of paying educational assistance allowance benefits. The court does not sit to review the wisdom or merits of the regulations here under attack, but only to determine if they are within the authority granted the Veterans' Administrator by Congress, and do not offend against plaintiffs' constitutional rights. 5 U.S.C. § 706(2)(B) and (C) (1970).

The standard sought to be employed by the V.A.—one credit for each one hour per week of class attendance throughout the term—is the traditional measurement of academic credit hours in colleges and universities throughout the country and in the oth-

er colleges of Wayne State University.[2] However, the plaintiffs assert that in the College of Lifelong Learning, Wayne State University has created a non-traditional program to attract those students who would not otherwise be able to attend college. To do this, the University has redefined what is full-time study for the purposes of academic credit in the Weekend College Program. And, the University claims, 38 U.S.C. § 1788(a)(4) obligates the Veterans' Administration to accept the University's definition of full-time study for the purposes of academic credit as the Administration's definition of full-time study for the purposes of educational assistance allowance benefits. The court is compelled to agree.

Regulations promulgated by the Veterans' Administrator are issued pursuant to the authority granted by Congress in 38 U.S.C. § 210(c)(1) (1970), which provides:

(c)(1) The administrator has authority to make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans' Administration and are consistent therewith including regulations with respect to the nature and extent of proofs and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws, the forms of application by claimants under such laws, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards.

Although 38 U.S.C. § 210(c)(1) is a broad grant of authority to the Administrator to make "all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans' Administration," the regulations must be "consistent" with the laws they seek to carry out. This statute contemplates that the Administrator shall promulgate only those regulations which implement powers given to him by Congress. *Texas Employers Ins. Ass'n v. United States*, 390 F.Supp. 142 (N.D.Tex. 1975). He may not issue regulations on matters which have not been delegated to him. The Administrator may ask Congress to enact necessary legislation related to veterans' affairs, but he may not legislate himself.

Congress enacted as part of the Vietnam Era Veterans' Readjustment Assistance Act of 1972, P.L. 92–540, Title III, § 316(2), the following provision relating to the measurement of full-time courses at degree granting institutions of higher learning, which has been codified at 38 U.S.C.A. § 1788(a)(4) (Supp.1977):

(a)(4) An institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis *shall be considered a full-time course* when a minimum of fourteen semester hours or the equivalent thereof (including such hours for which no credit is granted but which are required to be taken to correct an educational deficiency and which the educational institution considers to be quarter or semester hours for other administrative purposes), for which credit is granted toward a standard college degree, is required, except that where such college or university certifies, upon the request of the Administrator, that (A)

---

**2.** Defendants refer in their Memorandum of Points and Authorities in Support of their Motion for Summary Judgment to *American Universities and Colleges* (11th ed., 1973), a publication of the American Council on Education, which describes credit hours as follows:

Credit Hours. The quantitative aspects of a student's achievement are measured almost exclusively in terms of the time he spends in classes. Normally, for each course hour a week one credit is allowed. Laboratory classes usually require two or three hours in the laboratory for each unit of credit. The student in full-time attendance typically attends fifteen or sixteen hours of discussion or

lecture classes each week, which with the addition of his outside study, results in a work week of forty to fifty hours for the academic program.

\* \* \* \* \* \*

*Ibid* at 13. The American Council of Education, as *amicus* in this case, objects in its Brief in Opposition to Defendants' Motion For Summary Judgment to defendants' characterization of the statement quoted above as a definition of credit hours. But the *amicus* does admit that the passage describes the general characteristics common to undergraduate education and its setting. Amicus Br. at 20.

full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of such semester hours *shall be considered a full-time course*, but in the event such minimum number of semester hours is less twelve then twelve semester hours or the equivalent thereof, shall be considered a full-time course. [Emphasis added.]

This statute restated existing law with regard to the measurement of institutional undergraduate courses offered by a college or university, and made clear that a non-credit deficiency course was to be measured on a quarter- or semester-hour basis as determined by the institution in question, and was not to be converted to clock hours as the V.A. had been doing. S.R. 92–988, 92nd Cong., 2nd Sess., 1972 *U.S.Code Cong. & Admin.News*, pp. 4331, 4363. There is, however, nothing in the statute which either explicitly or implicitly authorizes the Administrator to set contact hour standards for full-time courses at institutions of higher learning. On the contrary, the reference to non-credit deficiency courses would seem to indicate that Congress did not intend that the V.A. have authority to make an independent determination regarding full-time courses. At the very least, it appears that Congress did not foresee and did not provide for the problems that would arise when institutions of higher learning certify as full-time, courses which do not require classroom "contact" hours which are equivalent to the number of credit hours awarded to students upon completion of the course. The statute as written, however, is clear: when full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen semester hours or the equivalent thereof, or when all undergraduate students carrying a mini-

mum of less than fourteen such semester hours or the equivalent thereof are considered full-time for other administrative purposes, then such an institutional undergraduate course "shall be considered a full-time course." The use of the word "shall" directs the Administrator to consider these courses as full-time courses. He is not granted by this statute authority to require that veteran students maintain a certain amount of contact hours as classroom time per week and per quarter or semester to qualify for full-time educational assistance allowances.

The Veterans Education and Training Amendments Act of 1970, P.L. 91–219, 84 Stat. 76, § 206, amended 38 U.S.C. § 1684(a)(4) (1970), a prior enactment relating to measurement of courses, to read as follows:

(a)(4) an institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis for which credit is granted toward a standard college degree shall be considered a full-time course when a minimum of fourteen semester hours or its equivalent is required; except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen semester hours or the equivalent thereof are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of semester hours, for which credit is granted toward a standard college degree, shall be considered a full-time course, but in the event such minimum number of semester hours under (B) is less than twelve semester hours or the equivalent thereof then twelve semester hours or the equivalent thereof shall be considered a full-time course.

Notwithstanding the provisions of clause (4), a veteran shall be considered to be pursuing a full-time course at a junior college, college or university if (A) he is carrying a number of semester hours, or the equivalent thereof, necessary to be considered a full-time course under clause (4), (B) credit is granted toward a standard college degree for not less than half the number of those hours and (C) he is carrying one or more courses for which no credit is granted toward such a degree but which he is required to take because of a deficiency in his education.

Much of this language was retained in 38 U.S.C. § 1788(a)(4), and the detailed legislative history supporting this section of the Veterans Education and Training Amendments Act of 1970 is relevant to an understanding of the provisions of 38 U.S.C. § 1788(a)(4).

The new clause (4) incorporates the present language of clause (3) of 38 U.S.C. § 1684(a) and *would add at the end an exception providing for a reduction of the minimum number of college semester hours required for payment of a full-time educational assistance allowance at two categories of institutions.* First, at an institution where full-time tuition is charged to all undergraduate students carrying a minimum of less than 14 semester hours or its equivalent, that number of hours, whatever it is, would become the minimum measurement of full-time study at that institution. Second, at an institution where all undergraduate students carrying a minimum number of hours less than 14 or its equivalent are considered full-time students administratively, that number of hours, but no less than 12, would become the minimum measurement of full-time study at that institution. The minimum number of hours at a particular institution would be certified by the college or university to the Administrator of Veterans Affairs on a block basis rather than in the case of each eligible veteran.

The second category is limited to a 12-semester-*hour minimum not only to comport with the practices of most col-*

*leges and universities but also to avoid having an entirely open-ended requirement. By contrast the first category is open-ended because the committee believes that a veteran who is paying full-time tuition should receive a full-time educational assistance allowance from the Veterans' Administration.* The testimony indicated that generally the minimum number of semester hours for tuition purposes at such institutions would not be less than 12, *or its equivalent at schools on trimester or quarter systems.*

It is recognized that the reduction in semester load that this new clause (4) would permit might result in a few veterans with the maximum 36 months of entitlement under the GI bill exhausting their entitlements prior to graduation. In all likelihood this would happen only as to one semester in light of the provision in 38 U.S.C. 1661(b) permitting GI bill payments to continue through the end of a semester or quarter if entitlement runs out during that semester or quarter. The committee believes that the veteran should be appraised by the Veterans' Administration at the start of his program of the possibility of such exhaustion of entitlement; thereafter it should be his responsibility to arrange his schedule and his finances.

The new definition would be of potential assistance not only to veterans attending colleges charging tuition on a semester basis but also to veterans attending colleges charging no tuition by the credit hour. *It would also permit more latitude in course scheduling for veterans required to work part-time during college and those who may not be academically prepared to carry a 14-semester-hour load. The approach taken is generally acceptable to the Veterans' Administration.* [Emphasis Added.]

S.R. 91–487, 91st Cong., 2nd Sess., 1970 *U.S.Code Cong. & Admin.News,* pp. 2576, 2598–2599. It is clear from the foregoing that congressional attention was focused in this amendment on the change from a fourteen to twelve semester hour requirement

for full-time study at a college or university. It is also clear that Congress intended that the decision as to the appropriate number of semester or quarter hours needed for full-time study at a given institution was to be made by that institution. The committee also intended that a veteran who was paying full-time tuition should receive full-time benefits. In the instant case, the school has determined that twelve credit hours per quarter shall meet the minimum full-time credit requirement, and the veteran students are paying full-time tuition in the College of Lifelong Learning.[3]

Authority for the regulations under review cannot be found in 38 U.S.C.A. § 1788(b) (Supp.1977), which authorizes the Veterans' Administrator to define part-time training "in the case of the types of courses referred to in subsection (a)." It would of course be impossible for the Administrator to define part-time training in the case of institutional undergraduate courses offered at colleges and universities without some prior knowledge as to what constituted full-time programs at these institutions. However, the Congressional scheme appears to have been to allow the institution of higher learning to define what was or was not full-time training, and then for the Administrator, using that definition as a base, to define part-time training (three-fourths of full-time, one-half of full-time, etc.). Thus, in referring to 38 U.S.C. § 1684(b), the predecessor statute to 38 U.S.C. § 1788(b), the Senate Committee noted:

> With respect to part-time study at institutions where full-time minimum requirements would be lowered under the new exception in clause (4), the committee would expect the Administrator of Veterans' Affairs to exercise his authority under 38 U.S.C. 1684(b) (sic) to re-define part-time minimum semester-hour requirements so as to make them proportionate to the full-time minimum at a particular institution. For example, if

the full-time minimum had been reduced to 12 hours, the three-quarter-time minimum would be reduced to 9 hours and the half time to 6 hours.

1970 U.S.Code Cong. & Admin.News, p. 2599.

## III

Congress and the Veterans' Administration are rightly concerned with the abuses which have developed over the years in the administration of the veterans educational assistance benefits program. Schools and programs have been developed for the specific purpose of attracting veterans who had federal money available to purchase such courses. To check these abuses, Congress passed the Veterans' Education and Employment Assistance Act of 1976, P.L. 94–502, § 205(4), 90 Stat. 2383, which amended 38 U.S.C. § 1673(d) (1970), by extending the reach of the "85–15" rule to include degree-granting colleges and universities. Under this statute, as amended, the Veterans' Administrator shall not approve the enrollment of any eligible veteran not already enrolled in a course in which more than 85 per cent of the students are having all or part of their expenses paid by the Veterans' Administration and/or by grants from other federal agencies. The constitutionality of this statute has been upheld. *Fielder v. Cleland,* 433 F.Supp. 115 (E.D.Mich., 1977); *Rolle v. Cleland,* 435 F.Supp. 260 (D.R.I., 1977). The abuses which Congress sought to check by this statute are described in Senate Report 94–1243, 94th Cong., 2nd Sess.:

> While reviewing the legislative history and intent of this section during consideration of the 1974 GI bill amendments, it became evident to the Committee that Congress was concerned about schools which developed courses specifically designed for those veterans with available federal moneys to purchase such courses. At the time that the section was original-

---

**3.** Defendants have not claimed, nor does the record indicate, that full-time tuition for degree candidates in the CLL's Weekend College Program is less than the tuition charged full-time students in the University's traditional under-graduate colleges. If it were substantially less, the question would then be presented whether students in the College of Lifelong Learning were actually being charged full-time tuition within the meaning of 38 U.S.C. § 1788(a)(4).

ly enacted, the veterans' educational assistance program was, of course, the prime (if not sole) source of Federal funds which could be utilized by students enrolled in such courses. The ready availability of these funds obviously served as a strong incentive to some schools to enroll eligible veterans. The requirement of a minimum enrollment of students not wholly or partially subsidized by the Veterans' Administration was a way of protecting veterans by allowing the free market mechanism to operate. . . . A minimal number of non-veterans were required to find the course worthwhile and valuable or the payment of Federal funds to veterans who enrolled would not be authorized. 1976 U.S.Code Cong. & Admin.News, p. 5310. But 38 U.S.C. § 1673(d) does not authorize the regulations here under consideration. It does not speak to the question of measurement of courses. Although the Administrator may have implemented the regulations now under review because he was animated by the same concerns which are expressed in the Senate Report, Congress did not by this statute authorize their promulgation. Nor did Congress by this statute call into question the validity of a degree granting educational program where veterans account for eighty percent of the student body. Congress set the cut-off figure at eighty-five percent.[4] The Administrator may not enlarge or reduce this figure. He cannot extend by regulation the reach of veterans benefits legislation. He acts to implement congressional policy, not to create his own.

The Court does not mean to intimate in this opinion any views as to the necessity of the challenged regulations. That is not a proper judicial function when reviewing administrative actions. Had the regulations here under consideration been a part of or authorized by statute, the Administrator could not have been held to have exceeded his statutory authority in seeking to implement them. *See, Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1977). The court would then have had to examine the implementing statute and the regulations promulgated thereunder in light of plaintiffs' constitutional challenges to their enactment. *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). The court does not, however, reach or consider plaintiffs' constitutional challenges in the resolution of this action, since the challenged regulations and circular, taken together and as the defendants seek to implement them, do exceed the authority granted the Veterans' Administration by Congress.

THEREFORE, IT IS HEREBY ORDERED, that plaintiffs' motion for summary judgment be GRANTED and defendants' motion for summary judgment be DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that the Veterans' Administration be permanently enjoined and directed to:

1. Pay full time monthly educational assistance allowance benefits pursuant to Title 38, United States Code, including chapters 34 and 36, to otherwise eligible veterans in the affected class who are enrolled in the College of Lifelong Learning at Wayne State University in a program of education leading to a standard college degree;

2. Continue to accept and approve Wayne State University's certifications of the enrollments of such veterans in the College of Lifelong Learning as full-time students in accordance with 38 U.S.C. § 1788(a)(4), until and unless such approval as to

---

**4.** There has been no assertion by defendants that eighty-five percent of the students enrolled in the College of Lifelong Learning have all or part of their education expenses paid by the Veterans' Administration and/or other federal agencies. Were this in fact the case, the Veterans' Administrator would be authorized by 38 U.S.C. § 1673(d) to withhold educational assist-ance allowance benefits from veterans attempting to enroll in such oversubscribed courses in the Program. But he would not be authorized by this statute to determine how full-time courses should be measured for the purposes of awarding full-time educational assistance allowance benefits to veteran students enrolled in the Program.

any particular student would violate 38 U.S.C. § 1673(d); and

3. Suspend enforcement of the following Veterans' Administration Regulations and Circular:

(a) VAR 14272(D), 38 C.F.R. § 21.-4272(d), as amended;

(b) VAR 14200(G), 38 C.F.R. § 21.-4200(g); and

(c) DVB Circular 20–77–16, dated February 9, 1977, revised by Change 1, dated April 21, 1977;

as to Wayne State University and the veteran students enrolled in the College of Lifelong Learning who are otherwise eligible to receive educational assistance allowance benefits as full-time students in a collegiate undergraduate course as defined in VA Regulation 14270(C) and 38 U.S.C. § 1681 *et seq.*

IT IS FURTHER ORDERED that, this action having been properly brought before this court pursuant to 28 U.S.C. § 1361, the defendants are hereby directed and required to accept the University's certification of full-time student status of veteran student plaintiffs in the affected class so long as the Weekend College Program of the College of Lifelong Learning continues to comply with the requirements of 38 U.S.C. § 1788(a)(4).

IT IS FURTHER ORDERED AND DECLARED that the amendment to VA Regulation 14272(D), 38 C.F.R. § 21.4272(d), announced at 41 Fed.Reg. 14398 (1976), and DVB Circular 20–77–16, as changed, were promulgated without statutory authority, and are therefore void and of no effect.