**WAYNE STATE UNIVERSITY et al.,**
**Plaintiffs-Appellees,**

v.

**Max CLELAND et al.,**
**Defendants-Appellants.**

**Nos. 78–1141, 78–1142.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1978.

Decided Dec. 21, 1978.

Rehearing and Rehearing En Banc
Denied Feb. 9, 1978.

James K. Robinson, U. S. Atty., Charles J. Kalil, Asst. U. S. Atty., Detroit, Mich., for defendants-appellants.

Richard A. Fulton, C. William Tayler, Kenneth J. Ingram, Sachs, Greenebaum & Tayler, Washington, D. C., Byron H. Higgins, Elmer L. Roller, Detroit, Mich., Gordon A. Gregory, Gregory, Van Lapik & Korney, Detroit, Mich., for plaintiffs-appellees.

Slade Gorton, Atty. Gen., Richard M. Montecucco, Asst. Atty. Gen., Olympia, Wash., for amicus curiae, State of Washington.

Before PHILLIPS, Chief Circuit Judge, CELEBREZZE, Circuit Judge, and PECK, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an appeal from summary judgment granted in favor of appellees, Wayne State University and others.[1] The district court found certain Veterans' Administration (V.A.) regulations governing educational benefits invalid as promulgated without statutory authority. 440 F.Supp. 811 (E.D. Mich.1977). Appellants, the Administrator and other Veterans' Administration officials, urge reversal arguing that 38 U.S.C. § 211(a) bars judicial review of the issues presented and, on the merits, sufficient authority exists to promulgate the regulations in question. For the reasons stated below we affirm the district court on its finding of jurisdiction, reverse its judgment on the merits, and remand the case for determination of constitutional issues not decided by the district court.

Effective October 26, 1976, the Administrator promulgated V.A. regulations 14272(d)[2] and 14200(g)[3] and issued Department of Veterans' Benefits (D.V.B.) Circu-

---

1. This action was originally brought as a class action by Wayne State and five students enrolled in its Weekend College Program of the College of Lifelong Learning. The district court dismissed the case with respect to three of the five students since they were nonveterans with interests too speculative to present a genuine case or controversy. Pursuant to Federal Rule of Civil Procedure 23(c)(1), the district court certified as an appropriate class all veterans enrolled in the Weekend College Program with the two remaining student plaintiffs as appropriate representatives of the class. 440 F.Supp. 811, 814 (E.D.Mich.1977).

2. 38 C.F.R. § 21.4272:
   (d) Courses; measurement equivalency. Where a term is not a standard semester or quarter as defined in § 21.4200(b), the equivalent for full-time training will be measured by multiplying the credits to be earned in the session by 18 if credit is granted in semester hours, or by 12 if credit is granted in quarters, and dividing the product by the number of whole weeks in the session. The resulting quotient will be the semester hours on which educational assistance allowance will be computed using the criteria of § 21.4270 proper or the criteria of footnote 3 to that section, whichever is appropriate. In determining whole weeks for this formula, 3 days or less will be disregarded and 4 days or more will be considered a full week. In no case will a course be measured as full-time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full time at the school) are required.

3. 38 C.F.R. § 21.4200:

lar 20–77–16.[4] (Hereinafter "regulations"). These regulations, taken together, require veterans to be enrolled in a course of study which schedules at least twelve "standard classroom sessions"[5] per week in order to qualify for full-time educational assistance benefits. Congress has defined full-time course of study in 38 U.S.C. § 1788(a)(4) as follows:

> (g) *Standard class session.* The term means the amount of time a student is required, in a regular quarter or semester, to spend in class per week for one quarter or one semester hour of credit. Normally a standard class session is not less than 1 hour (or 50-minute period) of academic instruction, 2 hours of laboratory training, or 3 hours of workshop training.

4. D.V.B. Circular 20–77–16:

1. Effective October 26, 1976, VA Regulation 14272(D) was amended to include: In no case will a course be measured as full time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full time at the school) are required. Likewise, a proportionate number of weekly standard class sessions is required to support an assignment of part-time training. In effect, VA Regulation 14200(G) defines the term "standard class session" as the amount of time a student is scheduled in the school's standard length term to spend in class per week for one quarter or one semester hour of credit. Normally, but not necessarily, a standard class session is not less than 1 hour (or 50 minute period) of academic instruction, 2 hours of laboratory training or 3 hours of workshop. (It follows that the length of a standard class session is determined by the school's own academic practices which establish a normal length, not an average length, for each type of class session based on the majority of the school's regularly scheduled programs. Generally, special class schedules for independent study programs, so-called accelerated programs, and night programs should not be considered in determining the length of a standard class session.)

a. In addition to meeting the credit-hour measurement of VA Regulation 14270(C), a course must also schedule a sufficient number of contact hours to support the assigned training time. Weekly contact hours, excluding any break periods, should be used to determine training time measurement if individual class periods are longer than a standard class session. Equivalent standard class sessions for measurement can be obtained by dividing the number of weekly contact hours by the length of a standard class session.

an institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis shall be considered a full-time course when a minimum of fourteen semester hours or the equivalent thereof (including such hours for which no credit is granted but which are required to be taken to correct an educational deficiency and which the edu-

\* \* \* \* \* \*

2. The above principle applies to all collegiate undergraduate courses measured on a credit-hour basis regardless of whether they are offered pursuant to a standard semester or standard quarter system. Accordingly, measurement of all applicable courses for academic terms beginning on or after October 26, 1976, are subject to this regulatory provision. Where applicable, overpayments should be created from the beginning of the first term after school officials are put on notice, as provided in par. 3 and school liability considered. (Notwithstanding the effective date of this regulatory amendment, this change merely reflects a clarification of longstanding Veterans Administration measurement policy rather than a new policy.) (Note: This principle does not apply to courses that are specifically dealt with in other VA Regulations in a manner which would obviously conflict with its literal application. Consequently, in addition to Graduate Instruction (VA Regulation 14273), Independent Study (VA Regulation 14280), Work Experience Courses (VA Regulation 14265), and Cooperative Courses (VA Regulation 14233(A)) are not subject to this provision.)

3. Although IHL's should still certify credit hours for enrollments, the VA must be able to determine the number of standard class sessions which are scheduled if this may result in reduced training time. Accordingly, all IHL's should be put on notice that when the equivalent of a standard class session per week for each credit hour granted is not scheduled, the enrollment certification should also report the number of such weekly sessions or the equivalent contact time. This may even require the need to differentiate between academic and laboratory instruction if clock hours are merely reported instead of standard class sessions (*e. g.*, a chemistry course may be given for 3 credits, involve 4 hours of attendance, but yet should only be reported if there is a 2 hour weekly lab). Any courses which are exempt pursuant to paragraph 2 should be clearly identified as such when weekly sessions or the equivalent contact time is to be reported.

5. *See* Note 3, *supra.*

cational institution considers to be quarter or semester hours for other administrative purposes), for which credit is granted toward a standard college degree, is required, except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of such semester hours shall be considered a full-time course, but in the event such minimum number of semester hours is less than twelve semester hours or the equivalent thereof, then twelve semester hours or the equivalent thereof shall be considered a full-time course.

In 1974 appellee Wayne State implemented a Weekend College Program (WCP) in its College of Lifelong Learning. The WCP utilizes the quarter system and students enrolled in the program must attend classes in three quarters each academic year. During each quarter a full-time student is enrolled for twelve credit hours consisting of a four credit hour workshop course, a four credit hour open circuit televised lecture course, and a four credit hour weekend conference course. The workshop course schedules regular classroom instruction and meets four hours each week of the quarter. The open circuit lecture course requires viewing five thirty-minute lectures each week. The conference course consists of two weekend conferences per quarter, each one 1,000 minutes in length.

For each four credit hour course the regulations require an institution to schedule 200 minutes of classroom instruction each week. Of the three courses in the WCP, only the workshop course meets this requirement. Students enrolled in the WCP pay full-time tuition, are considered full time administratively by Wayne State, and carry a minimum of twelve credit hours per quarter, but do not qualify for full-time benefits under the regulations.

Appellees filed suit in the district court challenging the validity of the regulations as promulgated by the Administrator. Appellees argued Congress had defined full-time study in § 1788(a)(4) and no authority existed in the Administrator to alter that definition. Appellants submitted that § 211(a) barred judicial review of the issues presented and that sufficient authority existed to issue the regulations.

The district court found § 211(a) did not bar judicial review of an action challenging the Administrator's authority to promulgate regulations. The district court held § 211(a) was enacted to preclude review only of the Administrator's decisions concerning individual claims or terminations of benefits under various veterans' benefits legislation. On the merits, the district court noted that Congress defined full time course of study for purposes of receiving full time benefits in § 1788(a)(4). The district court found the Administrator had the authority to define part-time study for purposes of receiving part time benefits,[6] but found no authority to alter the congressional definition of full-time study. From this statutory scheme the district court held the Administrator, through the regulations, redefined what Congress had explicitly defined as full-time study without the authority to do so. The district court held the regulations void, enjoined their further enforcement, and entered an order directing the Administrator to continue paying full time benefits to those veterans enrolled in the WCP as long as WCP complies with the congressional requirements contained in § 1788(a)(4).

6. 38 U.S.C. § 1788 (b):
   The Administrator shall define part-time training in the case of the types of courses referred to in subsection (a) . . . . .

## I

As a general proposition administrative decisions are subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, except to the extent statutes otherwise provide.[7] The issue in the present case is whether § 211(a) provides an exception to the reviewability of administrative decisions. Section 211(a) states in pertinent part that

. . . the decisions of the Administrator on any question of law or fact, under any law administered by the Veterans' Administration providing benefits for veterans . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.[8]

We agree with the district court that § 211(a) does not preclude a challenge to the Administrator's authority to promulgate regulations.

The Supreme Court held in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974),[9] that § 211(a) did not bar judicial review of constitutional challenges to provisions of veteran benefits legislation. The Court reasoned that application of § 211(a) to such constitutional challenges would not serve the two primary purposes of the statute. *Id.* at 373, 94 S.Ct. 1160. The first purpose is to insure veterans' benefits claims will not burden the courts and the V.A. with expensive and time consuming litigation. The second purpose is to insure that the technical and complex determinations and applications of V.A. policy connected with veterans' benefits claims will be "adequately and uniformly" made. *Id.* at 370, 94 S.Ct. 1160. The court also stated in *Johnson* that a construction of § 211(a) barring judicial review of constitutional challenges would call into question the constitutionality of the statute itself,[10] which construction should be avoided if the statute can otherwise be construed to obviate deciding the constitutional question. *See United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

The *Johnson* rationale is particularly appropriate in the present case. Suits challenging the authority to promulgate regulations will not involve the federal courts in the day to day operations of the V.A. Neither will our construction of § 211(a) spawn suits requesting federal courts to second guess the Administrator on the merits of particular claims for benefits or the termination of such benefits.[11] Suits challenging

---

**7.** 5 U.S.C. § 701(a):

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review

**8.** 38 U.S.C. § 211(a):

On and after October 17, 1940, except as provided in sections 775, 784, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

**9.** *See* companion case of *Hernandez v. Veterans' Administration*, 415 U.S. 391, 94 S.Ct. 1177, 39 L.Ed.2d 412 (1974).

**10.** *See Johnson v. Robison*, 415 U.S. at 366 n. 8, 94 S.Ct. 1160, and accompanying text.

**11.** In 1970 Congress amended § 211(a) to its present form. Prior to that time it stated in pertinent part that

the decisions of the Administrator on any question of law or fact *concerning a claim for benefits or payments* under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision. (Emphasis added.)

The italicized phrase was construed very narrowly by a number of cases decided by the United States Court of Appeals for the District of Columbia Circuit. The court held § 211(a) only barred review of claims for benefits and not suits challenging the propriety of the termination of benefits. *See Tracy v. Gleason*, 126 U.S.App.D.C. 415, 379 F.2d 469 (D.C.Cir.1967); *Thompson v. Gleason*, 115 U.S.App.D.C. 201, 317 F.2d 901 (1962); *Wellman v. Whittier*, 104 U.S.App.D.C. 6, 259 F.2d 163 (1958). Congress amended § 211(a) to specifically overrule this construction. *See* H.R.Rep. No. 91–1166, 91st

the statutory authority of the Administrator will not involve the courts in the complex and technical niceties of V.A. policy, but rather will seek a determination whether regulations have been promulgated pursuant to a congressional grant of authority. If we construe § 211(a) to bar judicial review of the present case, we would be finding a congressional intent to insulate from judicial review the limits of the Administrator's authority. This construction is not supported by the legislative history of § 211(a).[12]

Such a construction would also raise serious doubts about the statute's constitutionality.[13] We refuse to place such a construction on § 211(a) for neither its text nor its scant legislative history provides the "clear and convincing" evidence of congressional intent required by the Supreme Court before a statute will be construed to restrict access to judicial review. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1502, 18 L.Ed.2d 681 (1967); Brownell v. We Shung, 352 U.S. 180, 185, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956).

A review of the cases interpreting § 211(a) also demonstrates its inapplicability to the instant case. The cases where § 211(a) has barred judicial review have all involved suits challenging the Administrators' decisions concerning individual claims for benefits or the termination of existing benefits. See, e. g., Anderson v. Veterans' Administration, 559 F.2d 935 (5th Cir.

1977); Ross v. United States, 462 F.2d 618 (9th Cir.), cert. denied, 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 269 (1972); DeRodulfa v. United States, 140 U.S.App.D.C. 154, 461 F.2d 1240, cert. denied, 409 U.S. 949, 149 U.S.App.D.C. 154 (1972); Wickline v. Brooks, 446 F.2d 1391 (4th Cir. 1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 749, 30 L.Ed.2d (1972); Holley v. United States, 352 F.Supp. 175 (S.D.Ohio 1972), aff'd without opinion, 477 F.2d 600 (6th Cir. 1973). No decision of the Supreme Court or of this court has construed § 211(a) to bar judicial review of the Administrator's authority to promulgate regulations.[14]

## II

Turning to the merits we note that agency action is entitled to a presumption of regularity, although it is not shielded from a thorough, probing, in-depth review. "The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Township of Benton v. County of Berrien, 570 F.2d 114 (6th Cir. 1978); A.F.S.C.M.E. v. City of Cleveland, 484 F.2d 339 (6th Cir. 1973). The Supreme Court in Overton Park articulated a three prong test to be applied in determining the validity of administrative regulations. We must initially inquire whether the regulations were promulgated in excess of statutory authority. Second, the regulations may not be "arbitrary, capricious, an abuse of discretion, or other-

Cong., 2nd Sess., reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 3723, 3729.

Our construction today will neither frustrate the Congressional purpose behind § 211(a), nor will it evade the intent of Congress in amending § 211(a) in 1970.

12. See H.R.Rep. No. 91–1166, 91st Cong., 2nd Sess., reprinted in [1970] U.S.Code Cong. & Admin.News, p. 3723; H.R.Rep. No. 1258, 89th Cong., 2nd Sess., reprinted in [1966] U.S.Code Cong. & Admin.News, p. 1888; H.R.Rep. No. 1003, 89th Cong., 1st Sess., reprinted in [1965] U.S.Code Cong. & Admin.News, p. 3232.

13. See Johnson v. Robison, 415 U.S. at 366 n. 8, 94 S.Ct. 1160, and accompanying text.

14. See Holley v. United States, 352 F.Supp. 175 (S.D.Ohio 1972), aff'd without opinion, 477 F.2d 600 (6th Cir. 1973), where the court, in applying § 211(a) stated: "This Court would not hesitate to consider the merits of this action if the Veterans Administration had acted without statutory authority or if plaintiff had been denied a constitutional right." Id. at 176.

See Davis, Veterans Benefits, Judicial Review and The Constitutional Problem of "Positive" Government, 39 Ind.L.J. 183 (1964); Comment, Judicial Review and The Governmental Recovery of Veterans' Benefits, 118 U.Pa.L.Rev. 288 (1969).

wise not in accordance with law." [15] Finally, we must determine whether the agency followed necessary procedural requirements in the promulgation of the regulations. The application of the above criteria to the present case supports the validity of the regulations.

Regulations issued by the Administrator are promulgated pursuant to authority granted in 38 U.S.C. § 210(c)(1), which provides in pertinent part:

The Administrator has authority to make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans' Administration and are consistent therewith

. . . .

The district court found the Administrator exceeded this authority when he issued the regulations in question. The court reasoned that the regulations in question were inconsistent with the statutory definition of full-time study and, thus, outside the scope of authority granted in § 210(c)(1). The district court found § 1788(a)(4) was inherent-

ly clear and not in need of further interpretive regulations.

The district court interpreted § 1788(a)(4) to mean that once a student is enrolled in a course of study with a minimum of fourteen semester hours, or in a course of study where full tuition is charged, or in a course of study where he is considered full time administratively by the institution while carrying a minimum of twelve semester hours, he is entitled to full time educational assistance benefits. This interpretation of § 1788(a)(4) is correct except insofar as it does not apply the twelve semester hour minimum requirement to the second definition of full time study. Under a prior version of § 1788(a)(4), 38 U.S.C. § 1684(a), any time a veteran paid full-time tuition he was entitled to full time benefits. Under the prior statute, the regulations in question would be void. The present version of the statute, however, as embodied in § 1788(a)(4) requires a veteran to enroll in a minimum of twelve semester hours, even if full tuition is charged, in order to be considered full time.[16] Therefore, the term

---

**15.** 5 U.S.C. § 706(2)(a) (1970).

**16.** *Compare* the prior version of the statute 38 U.S.C. § 1684(a)(4):

an institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis for which credit is granted toward a standard college degree shall be considered a full-time course when a minimum of fourteen semester hours or its equivalent is required; except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen semester hours or the equivalent thereof are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of semester hours, for which credit is granted toward a standard college degree, shall be considered a full-time course, *but in the event such minimum number of semester hours under (B) is less than twelve hours or the equivalent thereof, then twelve semester hours or the equivalent thereof shall be considered a full-time course.* (Emphasis added),

*with* the present § 1788(a)(4):

an institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis shall be considered a full-time course when a minimum of fourteen semester hours or the equivalent thereof (including such hours for which no credit is granted but which are required to be taken to correct an educational deficiency and which the educational institution considers to be quarter or semester hours for other administrative purposes), for which credit is granted toward a standard college degree, is required, except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of such semester hours shall be considered a full-time course, *but in the event such minimum number of semester hours is less than twelve semester hours or the equivalent thereof, then twelve semester hours or the equivalent thereof shall be considered a full-time course;* (Emphasis added).

"semester hour" relates to all three categories of full-time study contained in § 1788(a)(4).

█ The Administrator convincingly argues that the regulations in question do not alter or redefine the congressional parameters of full-time study, but rather explain what Congress meant by the term "semester hour" used in all three parts of § 1788(a)(4).

The district court found

The standard sought to be employed by the V.A.—one credit for each one hour per week of class attendance throughout the term—*is the traditional measurement of academic credit hours in colleges and universities throughout the country and in the other colleges of Wayne State University.*

440 F.Supp. at 816–17. (Emphasis added. Footnote omitted.) [17] In light of this finding of fact it is hard for this court to conceive how the implementation of this requirement is inconsistent with what Congress intended when it used the term "semester hour." The Administrator is merely requiring, through the implementation of these regulations, that uniform notions of what constitutes a "semester hour" be utilized by Wayne State University and other educational institutions.

The basis for the district court's conclusion was a finding that nothing in § 1788(a)(4) explicitly or implicitly authorizes the Administrator to set standard classroom session requirements for full-time

study. The Administrator has the authority to issue regulations, pursuant to § 210(c)(1), which are consistent with any legislation administered by the V.A. We find the regulations in issue to be consistent with the Congressional definition of full-time study. Therefore, these regulations were promulgated within the scope of the Administrator's authority.

The regulations also pass muster under the final two parts of the *Overton Park* standard. The regulations are not an arbitrary and capricious exercise of administrative authority. Rather, they are a rational and reasonable implementation of what is meant by a "semester hour." The regulations are also a reasonable means to insure that potential abuses in the administration of veterans' educational benefits are prevented.[18] The procedures used by the Administrator in promulgating these regulations have not been challenged. Thus, the regulations comply with each part of the *Overton Park* standard and the district court erred in finding such regulations void. The district court erred in substituting its judgment for that of the Administrator. *Citizens to Preserve Overton Park, Inc., supra,* 401 U.S. at 416, 91 S.Ct. 814, 28 L.Ed.2d 136; *County of Berrien, supra,* 570 F.2d at 120.

## III

For the foregoing reasons, we agree with the district court that federal jurisdiction exists but disagree with its conclusion that

From a close reading of the two statutes it becomes clear that under the prior version a student could be carrying less than twelve semester hours and be considered full time as long as he was charged full tuition. Under the present version of § 1788(a)(4) no student can be full time without carrying at least twelve semester hours. Thus, a semester hour requirement and the interpretative regulations apply to all categories of full-time students.

17. The district court also noted that the American Council on Education describes credit hours as follows:

Credit Hours. The quantitative aspects of a student's achievement are measured almost exclusively in terms of the time he spends in classes. Normally, for each course hour a week one credit is allowed. Laboratory

classes usually require two or three hours in the laboratory for each unit of credit. The student in full-time attendance typically attends fifteen or sixteen hours of discussion or lecture classes each week, which with the addition of his outside study, results in a work week of forty to fifty hours for the academic program.

440 F.Supp. at 817 n. 2.

18. *See* Sen.Rep. No. 94–1243, 94th Cong., 2nd Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 5310, for a discussion of some of the abuses that have developed in the administration of veterans' educational benefits and how Congress enacted 38 U.S.C. § 1673(d), the 85–15 Rule, to protect against these abuses.

the Administrator was without authority to promulgate the regulations. In light of the district court's conclusions on statutory grounds, it did not reach appellees' constitutional challenges to the implementing statute and the regulations promulgated thereunder. Therefore, the case must be remanded to the district court for a determination of those constitutional issues.

The judgment of the district court is affirmed in part, reversed in part, and the cause is remanded for further consideration consistent with this opinion.