**MERGED AREA X (EDUCATION) IN the COUNTIES OF BENTON, CEDAR, IOWA, JOHNSON, JONES, LINN AND WASHINGTON, STATE OF IOWA, and Norman Carpenter, Appellees,**

v.

**Max CLELAND, Administrator, Veterans Administration, A. H. Thornton, Director, Education and Rehabilitation Service, Veterans Administration, and Robert L. Winters, Director, Veterans Administration Regional Office, Des Moines, Iowa, Appellants.**

No. 78–1757.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1979.

Decided Aug. 1, 1979.

---

Judith Whetstine, Asst. U. S. Atty., Cedar Rapids, Iowa (argued), for appellants; by James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, on brief.

Mark H. Rettig, Hines, Pence, Day & Powers, Cedar Rapids, Iowa (argued), for appellees; Ernest F. Pence, Cedar Rapids, Iowa, on brief.

Slade Gorton, Atty. Gen., Richard M. Montecucco, Sr., Asst. Atty. Gen., Chief, Ed. Division, and Larry R. Schreiter, Asst. Atty. Gen., Olympia, Wash., amicus curiae.

Before GIBSON, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant, Max Cleland, Administrator of the Veterans Administration (VA), appeals from a judgment of the district court holding that the VA does not have the statutory authority to promulgate Veterans Administration Regulation 14272(D), 38 C.F.R. § 21.4272(d) (1978); V.A. Regulation 14200(G), 38 C.F.R. § 21.4200(g) (1978); and Department of Veteran's Benefits (D.V.B.) Circular 20–77–16, dated Feb. 9, 1977, revised by change 1, Apr. 21, 1977 (see Appendix). For reversal appellant argues that (1) judicial review of the Veterans Administration Regulations is precluded by 38 U.S.C. § 211(a); (2) plaintiff-appellee, Merged Area X (Education) (hereinafter referred to as Kirkwood), has no standing in this case; and (3) the VA has statutory authority to promulgate the regulations in question. For the following reasons, we agree with the district court that judicial review is proper and that Kirkwood has standing, but we disagree with the district court's conclusion that the VA does not have statutory authority to promulgate the regulations. We reverse and remand accordingly.

There are two plaintiffs in this case, Kirkwood and Norman Carpenter. Kirkwood, located in Cedar Rapids, Iowa, is an accredited public institution of higher learning (IHL) which offers two years of instruction, fulfilling the requirements of an associate degree. Norman Carpenter is a full-time student at Kirkwood and has been enrolled in Kirkwood's non-traditional program since August, 1977. Carpenter is a veteran who stands to lose full-time veterans educational benefits if the VA regulations are allowed to stand and if he remains in Kirkwood's non-traditional program.

In order to receive full-time educational benefits, a veteran must be enrolled in a full-time academic program. The contested regulations define full-time academic program to be twelve "contact hours," or, twelve hours of time "in class per week for one quarter or one semester." In Kirkwood's non-traditional program, students pay full tuition and are enrolled for 3 classes of four hours each, for a total of twelve hours credit. However, they are in class only nine hours per week, making up the extra hours, one per class, with additional readings, written papers or special projects. The courses in the non-traditional program cover the same subject matter and utilize the same materials as those in the traditional education program but are designed to provide more flexibility to students who work full-time or for other reasons have scheduling problems.

Pursuant to the above regulations, the VA notified Kirkwood that beginning with the Summer, 1978, school session those veterans enrolled in its non-traditional program would no longer be eligible for full-time educational benefits because they were not in class twelve hours per week. Kirkwood and Carpenter filed a complaint on June 28, 1978, alleging that the VA regulations were promulgated without statutory authority and in violation of the first, fifth and tenth amendments of the United States Constitution. They sought mandamus, declaratory judgment, a temporary restraining order and a permanent injunction. The parties agreed to submit the matter to the court without a hearing and upon written briefs. On August 17, 1978, the district court issued its findings of fact and conclusions of law ordering the VA to: accept Kirkwood's designation of full-time students; pay full-time benefits to veterans enrolled in Kirkwood's non-traditional program who were duly certified as full-time students by Kirkwood; and suspend enforcement of Veterans Administration Regulations 14272(D), 14200(G) and Circular D.V.B. 20–77–16.

■ Appellant's first contention of error is that judicial review is precluded by 38 U.S.C. § 211(a) (Supp.1979) which states:

[T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

The above statute was designed to prevent judicial review of decisions on individual claims made by the VA. This is a valid policy since to not limit judicial review in this manner would overload the courts with the duty of second-guessing a specialized agency on technical and complex issues. However, the above statute was not designed to preclude judicial review of a challenge to the Administrator's authority to promulgate the regulations in the first instance. *Wayne State University v. Cleland*, 590 F.2d 627, 631 (6th Cir. 1978). Here, plaintiffs-appellees have challenged the Administrator's authority to promulgate the regulations and, therefore, 38 U.S.C. § 211(a) does not preclude review.

 Appellant's second contention of error is that Kirkwood has no standing in this case. Appellant argues that veteran's educational benefits are not paid to the school but are paid directly to the student for tuition, fees and books, as well as subsistence. Therefore, argues appellant, any rights allegedly violated by the regulations belong to the veteran, not the school. We cannot agree. The institution is injured in that its definition of full-time student is overruled by the VA. Even the VA recognizes this as shown by the fact that it notified Kirkwood of its decision to cease full-time funding for students enrolled in Kirkwood's non-traditional program. Thus there is a sufficient injury to Kirkwood to fulfill the case or controversy requirement of the constitution. *Wayne State University v. Cleland*, 440 F.Supp. 811, 813 (E.D. Mich.1977), *rev'd on other grounds*, 590 F.2d 627 (6th Cir. 1978).

 Appellant's third contention of error goes to the merits of the controversy. Appellant claims that the district court erred in holding that the educational institutions, rather than the VA, have the right to determine what constitutes a full-time academic load for the purposes of receiving full-time veteran's educational benefits. We see the attack on the VA's authority as posing two distinct questions: (1) does the VA have the authority to establish twelve semester hours, as opposed to ten, fourteen, etc., as the minimum a veteran can carry and still be considered a full-time student, and (2) does the VA have the authority to define "semester hours" as twelve hours in class per week for one standard semester term?

The answer to the first question lies in the proper interpretation of 38 U.S.C. § 1788(a)(4) which, as set forth below, establishes when an undergraduate curriculum is deemed to be full-time:

[A]n institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis shall be considered a full-time course when a minimum of fourteen semester hours or the equivalent thereof (including such hours for which no credit is granted but which are required to be taken to correct an educational deficiency and which the educational institution considers to be quarter or semester hours for other administrative purposes), for which credit is granted toward a standard college degree, is required, except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of such semester hours shall be considered a full-time course, *but in the event such minimum number of semester hours is less than twelve semester hours or the equivalent thereof, then twelve semester hours or the equivalent thereof shall be considered a full-time course*; . . . (emphasis added)

If, as appellant alleges, the proviso (in italics) applies to subparts (A) and (B), Congress itself has limited the educational institution's ability to define full-time status by imposing the twelve semester hour mini-

mum. If this is the case, the VA cannot be held to have exceeded its authority by merely reiterating in its regulations the twelve hour minimum which Congress has already imposed. If, however, the proviso applies only to subpart (B), as appellee and amicus curiae argue, the educational institutions remain free, as set forth in subpart (A), to define full-time course however they wish.

The lower court in this case based its decision entirely on *Wayne State University v. Cleland, supra,* 440 F.Supp. 811, which, at the time the court reached its decision, was the only case on point. In *Wayne State,* the district court held that the proviso in § 1788(a)(4) applied only to subpart (B), therefore leaving it up to the individual institutions to determine what constitutes a full-time student by charging full-time tuition as provided in subpart (A). Based on this finding, the district court was forced to conclude that the VA usurped the power given to Wayne State University by imposing the twelve semester hour minimum.

We cannot agree with the above interpretation of § 1788(a)(4). The Sixth Circuit has since overruled the district court in *Wayne State* and rightly so. *Wayne State University v. Cleland,* 590 F.2d 627 (6th Cir. 1978). As the Sixth Circuit pointed out, a comparison of § 1684(a)(4),[1] the predecessor to § 1788(a)(4), and § 1788(a)(4) reveals Congress's intent that the proviso, and thus the twelve semester hour minimum requirement, apply to subparts (A) and (B), thereby effectively limiting the institution's ability to define "full-time" student. In § 1684(a)(4) the proviso explicitly stated it applied only to subpart (B). In 1972, the section was amended and the words limiting the proviso to subpart (B) were deleted, leaving the clear impression that the twelve hour minimum in the proviso now applies to both subparts (A) and (B).

We note further that the district court in *Wayne State* relied on the following legislative history to support its position:

The new clause (4) incorporates the present language of clause (3) of 38 U.S.C. § 1684(a) and would add at the end an exception providing for a reduction of the minimum number of college semester hours required for payment of a full-time educational assistance allowance at two categories of institutions. First, at an institution where full-time tuition is charged to all undergraduate students carrying a minimum of less than 14 semester hours or its equivalent, that number of hours, whatever it is, would become the minimum measurement of full-time study at that institution. Second, at an institution where all undergraduate students carrying a minimum number of hours less than 14 or its equivalent are considered full-time students administratively, that number of hours, but no less than 12, would become the minimum measurement of full-time study at that institution. The minimum number of hours at a particular institution would be certified by the college or university to the Administrator of Veterans Affairs on a block basis rather than in the case of each eligible veteran.

The second category is limited to a 12-semester-hour minimum not only to comport with the practices of most colleges

---

1. An institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis for which credit is granted toward a standard college degree shall be considered a full-time course when a minimum of fourteen semester hours or its equivalent is required; except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen semester hours or the equiv-

alent thereof are considered to be pursuing a full-time course for other administrative purposes, then such an institutional undergraduate course offered by such college or university with such minimum number of semester hours, for which credit is granted toward a standard college degree, shall be considered a full-time course, *but in the event such minimum number of semester hours under (B) is less than twelve hours or the equivalent thereof, then twelve semester hours or the equivalent thereof shall be considered a full-time course.* (Emphasis added). 38 U.S.C. § 1684(a)(4).

and universities but also to avoid having an entirely open-ended requirement. By contrast the first category is open-ended because the committee believes that a veteran who is paying full-time tuition should receive a full-time educational assistance allowance from the Veterans' Administration. The testimony indicated that generally the minimum number of semester hours for tuition purposes at such institutions would not be less than 12, or its equivalent at schools on trimester or quarter systems. S.Rep. No. 91–487, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 2576, 2598–99.

As the district court correctly interpreted, the above language indicates that the twelve hour requirement applies only to subpart (B). However, this is the 1970 legislative history for § 1684(a)(4), not the 1972 legislative history for § 1788(a)(4), which is the current law. Therefore, the court's reference to the legislative history does not support its position that the proviso applies only to subpart (B) but supports the position of the Sixth Circuit, which we adopt, that the proviso in § 1684(a)(4) applies only to subpart (B). As stated, by comparing the provisos in § 1684(a)(4) and § 1788(a)(4), it is clear the current law intends to impose the twelve hour minimum on both subparts (A) and (B).[2]

For the above-stated reasons, we agree with the Sixth Circuit that Congress mandated a twelve semester hour minimum for all undergraduate students who seek to obtain full-time veterans benefits. Therefore,

the VA is merely including Congress's mandate in its regulations by requiring twelve semester hours and is not exceeding its statutory authority.

The next question is whether the VA has exceeded its authority in defining § 1788(a)(4)'s term "semester hour" as one hour (or fifty minutes) in the classroom per week for a standard semester. Again, we agree with the Sixth Circuit that the definition of "semester hour" is within the VA's authority to "make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans' Administration." 38 U.S.C. § 210(c)(1). As even the district court in *Wayne State* acknowledged, "one credit for each one hour per week of class attendance throughout the term—is the traditional measurement of academic credit hours in college and universities throughout the country." *Wayne State University v. Cleland, supra,* 440 F.Supp. at 816. Moreover, the imposition of uniform criteria is necessary to prevent circumvention of the twelve semester hour limit which would occur if each institution could define "semester hour" as it wished.

Recently both the Senate and the House of Representatives have acknowledged that authority rests in the VA, not the educational institutions, to define the parameters of full-time study. The House did so in commenting disfavorably on "recent Court decisions limiting the Veterans Administration's authority to implement statutory provisions relating to measurement and pursuit criterias [sic]."[3] The Senate noted that

---

**2.** The appellees also rely on the decision of *Evergreen State College v. Cleland,* 467 F.Supp. 508 (W.D.Wash.1979), *appeal docketed,* No. 79–4372 (9th Cir. May 4, 1979), which rejected the Sixth Circuit's position in *Wayne State University v. Cleland, supra,* 590 F.2d 627. However, the district court in *Evergreen* relied on the 1970 legislative history in reaching its decision. As explained above, such reliance is not only misplaced but supports the contrary conclusion.

**3.** The Committee notes with concern, however, recent Court decisions limiting the Veterans Administration's authority to implement statutory provisions relating to measurement and pursuit criterias (sic). In particular two Feder-

al court decisions now on appeal have effectively enjoined the VA Administrator from independently determining the nature and rate of collegiate course pursuit. Instead, the Administrator is compelled to pay G.I. bill educational benefits solely on the credit-hour enrollment of the eligible person as certified by the college. Under such circumstances, the Veterans Administration is completely barred from its traditional role of determining pursuant to its statutory interpretation, the type and actual pursuit of instruction for which credit-hour enrollment is certified and thus from determining the statutory rate of benefits which the Congress intended should be provided for such instruction. The Committee is not questioning the right of a

there was concern on the part of some educational institutions over the VA regulations defining full-time academic status and remarked that after the study on this issue was completed it would determine if the requirements were in need of change. In expressing this position, the Senate never questioned the VA's authority to promulgate such regulations in the first instance.[4]

For all of the foregoing reasons, we reverse the judgment and order of the district court and hold that the Veterans Administration has not exceeded its statutory authority in promulgating V.A. Regulation 14272(D), 38 C.F.R. § 21.4272(d) (1977), as amended 41 Fed.Reg. 14398 (1976); V.A. Regulation 14200(G), 38 C.F.R. § 21.4200(g) (1977); D.V.B. Circular 20–77–16, dated February 9, 1977, revised by Change 1, April 21, 1977. In light of the district court's conclusions on the VA's statutory authority, it did not reach appellee's constitutional challenges to the statute and the regulations promulgated thereunder. Therefore, we remand for a determination of these constitutional issues.

school to establish whatever enrollment policies, course credit standards, or teaching methods it deems proper. It does, however, question the right of the school to have these made binding on the Veterans Administration and thus solely determine the rate of Federal benefits to be paid on veterans and other eligible persons. House of Representatives, Report of the Committee on Appropriations, H.R.Rep. No. 95–1255, 95th Cong., 2nd Sess. (1978).

4. 'Seat Time'

During the past several months, the Committee has received numerous comments from those involved in degree-granting post-secondary education, voicing concern with the implementation by the VA, and the enforcement thereof, of DVB circular 20–76–16—Measurement for Payment Purposes VA Regulation 14272(d). . . .

Those individuals within the education community who oppose the Veterans' Administration's adoption of this course measurement for purpose of GI bill payment forcefully argue that the Veteran's Administration has no statutory authority under section 1788, to dictate what constitutes a standard class session or to what extent institutions may offer classes on other than a weekly basis. To date, the Committee is informed that approximately 27 edu-

APPENDIX

V.A. Regulation 14272(D) reads as follows:

(D) Course—Measurement Equivalency. Where a term is not a standard semester or quarter as defined in VA Regulation 14200(B), the equivalent for full-time training will be measured by multiplying the credits to be earned in the session by 18 if credit is granted in semester hours, or by 12 if credit is granted in quarters, and dividing the product by the number of whole weeks in the session. The resulting quotient will be the semester hours on which educational assistance allowance will be computed using the criteria of VA regulation 14270 proper or the criteria of footnote 3 to that paragraph, whichever is appropriate. In determining whole weeks for this formula, 3 days or less will be disregarded and 4 days or more will be considered a full week. In no case will a course be measured as full-time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full-time at the school) are required.

cational institutions provide at least one course not in compliance with the VA's seat time requirements. Examples of institutions with courses not meeting the seat time provisions include the State University of New York at Buffalo, the University of California at Los Angeles, the University of New Hampshire, the University of Rochester, the University of Southern California, and the Wayne State University.

In light of the controversy surrounding this issue—already one institution, Wayne State University, has sought and been afforded injunctive relief in Federal District Court (*Wayne State University, et al. v. Max Cleland, Administrator, et al.,* [440 F.Supp. 811] USDC E.D. Mich., CA 77–0973.)—the Committee has required the study and report thereof mandated to be conducted under this paragraph to include comprehensive examination and evaluation of the need for and effectiveness of the "seat time" requirement.

 * * * *

The Committee expects the study and the report thereon to include a sufficient discussion and analysis of the 'seat time' regulation to enable the Committee to determine whether or to what extent such requirement is in need of change. 123 Cong.Rec.S. 17510 (daily ed. Oct. 20, 1977).

V.A. Regulation 14200(G) reads as follows:

(G) Standard Class Session. The term means the amount of time a student is required, in a regular quarter or semester to spend in class per week for one quarter or one semester hour of credit. Normally a standard class session is not less than 1 hour (or 50 minute period) of academic instruction, 2 hours of laboratory training, or 3 hours of workshop training.

DVB Circular 20–77–16 and Change 1 read as follows:

Department of Veterans Benefits
Veterans Administration
Washington, D. C. 20420

DVB Circular 20–77–16
February 9, 1977
(Confirming Teletype Trans.) and incorporating CHANGE 1 (TWX 4/21)

MEASUREMENT FOR PAYMENT PURPOSES VA REGULATION 14272(D)

1) Effective October 26, 1976, VA Regulation 14272(D) was amended to include: In no case will a course be measured as full-time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full-time at the school) are required. Likewise, a proportionate number of weekly standard class sessions is required to support an assignment of part-time training. "In effect, VA Regulation 14200(G) defines the term 'standard class session' as the amount of time a student is scheduled in the school's standard length term to spend in class per week for one quarter or one semester hour of credit. Normally, but not necessarily, a standard class session is not less than 1 hour (or 50 minute period) of academic instruction, 2 hours of laboratory training or 3 hours of workshop. (It follows that the length of a standard class session is determined by the school's own academic practices which establish a normal length, not an average length, for each type of class session based on the majority of the school's regularly scheduled programs. Generally, special class schedules for independent study programs, so-called accelerated programs, and night programs should not be considered in determining the length of a standard class session)."

a) In addition to meeting the credit-hour measurements of VA Regulation 14270(C),

a course must also schedule a sufficient number of contact hours to support the assigned training time. Weekly contact hours, excluding any break periods, should be used to determine training time measurement if individual class periods are longer than a standard class session. Equivalent standard class sessions for measurement can be obtained by dividing the number of weekly contact hours by the length of a standard class session.

b) If a school conducts a term shorter than a normal quarter or semester, weekly contact hours of instruction must be increased correspondingly for measurement as an accelerated course under the provisions of VAR 14272(D).

2) The above principle applies to all collegiate under-graduate courses measured on a credit-hour basis regardless of whether they are offered pursuant to a standard semester or standard quarter system. Accordingly, measurement of all applicable courses for academic terms beginning on or after October 26, 1976, are subject to this regulatory provision. Where applicable, overpayments should be created from the beginning of "THE FIRST TERM AFTER SCHOOL OFFICIALS ARE PUT ON NOTICE, AS PROVIDED IN PARAGRAPH 3," and school liability considered.

(Notwithstanding the effective date of this regulatory amendment, this change merely reflects a CLARIFICATION of long standing Veterans Administration measurement policy rather than new policy.)

"(NOTE: This principle does not apply to courses that are specifically dealt with in other VA Regulations in a manner which would obviously conflict with its literal application consequently, in addition to graduate instruction (VA Regulation 14273), independent study, (VA Regulation 14280), work experience courses (VA Regulation 14265), and cooperative courses (VA Regulation 14233(A)); are not subject to this provision.)"

3) Although IHL's (institutions of higher learning) should still certify credit hours for enrollments, the VA must be able to deter-

mine the number of standard class sessions which are scheduled if this may result in reduced training time. Accordingly, all IHL's should be put on notice that when the equivalent of a standard class session per week for credit hour granted is not scheduled, the enrollment certification should also report the number of such weekly sessions or the equivalent contact time. This may even require the need to differentiate between academic and laboratory instruction if clock hours are merely reported instead of standard class sessions (e. g. a chemistry course may be given for 3 credits, involve 4 hours of attendance, but yet should only be reported as entailing 3 standard class sessions if there is a 2-hour weekly lab.).

"Any courses which are exempt pursuant to Paragraph 2 should be clearly identified as such when weekly sessions of the equivalent contact time is to be reported."

4) Since our administrative experience suggests that the measurement of some courses offered by colleges and universities across the nation may be directly affected by this regulatory amendment, special attention should be given to this matter. The amount of contact time scheduled for credit hours granted should be checked during compliance surveys. A spot check of several unit courses against the catalog or most current class schedule will generally suffice unless discrepancies are found or there is some other basis for suspecting a problem in this area.

5) This instruction will necessitate a change to PG 21–1 section M–45, which will be forthcoming. "State approving agencies should be requested to review IHL approvals since many courses which are short in instructional contact time (e. g. undergraduate seminars and honor courses) may be approvable as independent study. Proper approval would be directly beneficial when a major portion of the credits are earned through conventional study. (See: VA Regulation 14280(B) and M22–2 PT VI, Ch 4, PAR 4.04H, regarding the measurement of independent study courses.)"