The EVERGREEN STATE COLLEGE et al., Plaintiffs-Appellees,

v.

Max CLELAND, Administrator, Veterans Administration, et al., Defendants-Appellants.

No. 79–4372.

United States Court of Appeals, Ninth Circuit.

June 23, 1980.

Before SKELTON *, Senior Judge, and GOODWIN and FERGUSON, Circuit Judges.

SKELTON, Senior Judge:

In this case, the Veterans' Administration, Max Cleland, Administrator of the V.A. (hereinafter called the Administrator), and other V.A. officials, defendants-appellants (hereinafter called the V.A. or appellants), appeal from a summary judgment of the United States District Court for the Western District of Washington in favor of Evergreen State College, et al., plaintiffs-appellees (hereinafter called appellees), in which the district court held that the V.A. does not have the statutory authority to promulgate Veterans Administration Regulation 14272(D), 38 C.F.R. § 21.4272(d) (1978); V.A. Regulation 14200(G), 38 C.F.R. § 21.4200(g) (1978); and Department of Veteran's Benefits (D.V.B.) Circular 20–77–16, dated Feb. 9, 1977, revised by change 1, Apr. 21, 1977, and enjoined their enforcement. 467 F.Supp. 508 (W.D.Wash.1979). The appellants contend that (1) judicial review of the V.A. regulations is precluded by 38 U.S.C. § 211(a);[1] and (2) the V.A. has statutory authority to issue the regulations and the circular in question. The appellees argue that the judgment of the district court is correct, and also that the regulations and circular violate their 1st, 5th and 10th Amendment rights. ' We agree with the district court that the promulgation of the regulations and circular by the Administrator of the V.A. is subject to judicial review, but, on the merits, we disagree with the decision of the district court that the V.A. does not have statutory authority to issue the regulations. Therefore, we re-

Katherine S. Gruenheck, Washington, D. C., for defendants-appellants.

Richard Montecucco, Olympia, Wash. (argued), Lewis M. Wilson, Spokane, Wash., on brief for plaintiffs-appellees.

* The Honorable Byron G. Skelton, Senior Judge of the United States Court of Claims, sitting by designation.

1. 38 U.S.C. § 211(a) provides as follows:
"[T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."

verse the judgment on the merits and remand the case for determination of the constitutional issues not decided by the district court.

This case is on "all fours" with the cases of *Wayne State University v. Cleland,* 590 F.2d 627 (6 Cir. 1978), and *Merged Area X (Ed.), etc. v. Cleland,* 604 F.2d 1075 (8 Cir. 1979), in that every issue involved in the instant case was present in both of those cases. Both courts held, as we do, that the promulgation of regulations by the Administrator of the V.A. is subject to judicial review, and on the merits that the identical regulations and circular involved in our case were valid and issued pursuant to statutory authority. In both cases, the district courts held that the regulations and circular with which we are concerned were not based on statutory authority and were accordingly invalid. These judgments were reversed and the cases were remanded for consideration of the constitutional questions that were not reached by the district courts. We approve the reasoning and decisions of the appellate courts in those cases in deciding the instant case.

The V.A. points out that after World War II Congress enacted the GI Bill to provide a variety of benefits to returning veterans, including education assistance.[2] Congress authorized the V.A. Administrator to administer the program. 38 U.S.C. § 210(c)(1).[3]

Under the program, once an application for benefits is received from a veteran and it is approved, the Administrator determines the level of assistance available under the Act (38 U.S.C. § 1682), depending upon the type of program involved (e. g., institutional, cooperative, or independent study) (see 38 U.S.C. § 1681), and the measure of time the veteran is engaged in study found to be either institutional or cooperative (38 U.S.C. § 1788(a)(4) and (5)).[4]

\* \* \* \* \* \*

2. See 38 U.S.C. § 101, *et seq,* as amended.

3. 38 U.S.C. § 210(c)(1) provides:
   "(c)(1) The Administrator has authority to make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans' Administration and are consistent therewith, including regulations with respect to the nature and extent of proofs and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws, the forms of application by claimants under such laws, the methods of making investigations and medical examinations, and the manner and form of adjudications and awards. Any rules, regulations, guidelines, or other published interpretations or orders, or any amendment thereto, issued pursuant to the authority granted by this subsection or any other provision of this title shall contain, immediately following each substantive provision of such rules, regulations, guidelines, or other published interpretations or orders, or any amendment thereto, citations to the particular section or sections of statutory law or other legal authority upon which such rule, regulation, guideline, or other published interpretation or order is based or, in the case of any amendment thereto, upon which such amendment and the rule, regulation, guideline, interpretation or order being amended is based."

4. 38 U.S.C. § 1788 provides in pertinent part:
   "(a) For the purposes of this chapter and chapters 34 and 35 of this title—

"(4) an institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis shall be considered a full-time course when a minimum of fourteen semester hours or the equivalent thereof (including such hours for which no credit is granted but which are required to be taken to correct an educational deficiency and which the educational institution considers to be quarter or semester hours for other administrative purposes), for which credit is granted toward a standard college degree, is required, except that where such college or university certifies, upon the request of the Administrator, that (A) full-time tuition is charged to all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, or (B) all undergraduate students carrying a minimum of less than fourteen such semester hours or the equivalent thereof, are considered to be pursuing a full-time course for other administrative purposes, then such an *institutional* undergraduate course offered by such college or university with such minimum number of such semester hours shall be considered a full-time course, but in the event such minimum number of semester hours is less than twelve semester hours or the equivalent thereof, then twelve semester hours or the equivalent thereof shall be considered a full-time course;

"(5) a program of apprenticeship or a program of other on-job training shall be considered a full-time program when the eligible

The administrative provisions of the Act relating to payment of education assistance or subsistence authorize the Administrator, pursuant to regulations which he may prescribe, to determine such questions as a veteran's enrollment in, pursuit of, and attendance at a program of education or training. 38 U.S.C. § 1780(g).[5] The types of undergraduate programs that an eligible veteran may pursue include institutional courses, cooperative, and independent study (38 U.S.C. §§ 1681(b) and 1682(a)(2) and (e)). By statute, an institutional program is one where the curriculum is centered entirely around classroom instruction. By contrast, Congress defined a cooperative course as one which includes both institutional courses and on-the-job training. Independent study was defined by Congress to be study leading to a college degree which is not conducted in residence. Attendance in an institutional course is to be measured in accordance with Section 1788(a)(4), while attendance in a cooperative course is to be measured in accordance with 38 U.S.C. § 1788(a)(5). Congress determined that no subsistence allowance should be paid to a student enrolled in an independent study course. For this reason, there is no provision relating to the measurement of time spent in such a course. See 38 U.S.C. § 1682(e).

The regulations and circular at issue in this case were promulgated by the Administrator pursuant to 38 U.S.C. § 1788(a)(4). This provision of the Act measures attendance in an institutional undergraduate course offered by a college or university on a quarter or semester-hour basis. Under this provision, a course is considered full-time if it meets one of three criteria: (1) the course entails a minimum of 14 semester hours credit toward a standard college degree; (2) the course involves a minimum of 12 semester hours of credit and the school certifies that it charges full-time tuition for such a course; or (3) the course involves a minimum of 12 semester hours credit and the school certifies that it considers such a course to be full-time for other administrative purposes.

The first regulation in question, 38 C.F.R. 21.4272(d),[6] provides a formula for convert-

---

veteran or person is required to work the number of hours constituting the standard workweek of the training establishment, but a workweek of less than thirty hours shall not be considered to constitute full-time training unless a lesser number of hours has been established as the standard workweek for the particular establishment through bona fide collective bargaining; and

　　*　　*　　*　　*　　*　　*

"(b) The Administrator shall define part-time training in the case of the types of courses referred to in subsection (a), and shall define full-time and part-time training in the case of all other types of courses pursued under this chapter or chapter 34 or 35 of this title."

5. 38 U.S.C. § 1780(g) provides:

"(g) The Administrator may, pursuant to regulations which the Administrator shall prescribe, determine enrollment in, pursuit of, and attendance at, any program of education or training or course by an eligible veteran or eligible person for any period for which the veteran or person receives an educational assistance or subsistence allowance under this chapter for pursuing such program or course. Subject to such reports and proof as the Administrator may require to show an eligible veteran's or eligible person's enrollment in and satisfactory pursuit of such per-

son's program, the Administrator is authorized to withhold the final payment of benefits to such person until the required proof is received and the amount of final payment is appropriately adjusted."

6. 38 C.F.R. 21.4272(d) provides:

"(d) COURSES; MEASUREMENT EQUIVALENCY. Where a term is not a standard semester or quarter as defined in § 21.4200(b), the equivalent for full-time training will be measured by multiplying the credits to be earned in the session by 18 if credit is granted in semester hours, or by 12 if credit is granted in quarters, and dividing the product by the number of whole weeks in the session. The resulting quotient will be the semester hours on which educational assistance allowance will be computed using the criteria of § 21.4270 proper or the criteria of footnote 3 to that paragraph, whichever is appropriate. In determining whole weeks for this formula, 3 days or less will be disregarded and 4 days or more will be considered a full week. In no case will a course be measured as full-time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full time at the school) are required".

ing a non-standard term of undergraduate study into equivalent semester or quarter-hours. This regulation also states that a course cannot be considered to be full-time if less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full-time at the school) are required. A second regulation, 38 C.F.R. 21.4200(g),[7] then defines the term "standard class session" as the amount of time a stu-

dent is required, in a regular quarter or semester, to spend in class per week for one quarter or one semester-hour of credit per term. The one-hour class session per week per credit hour rule stated in 38 C.F.R. 21.4272(d) (hereinafter referred to as "the seat-time rule") is repeated in this second regulation.

DVB Circular 20–77–16, effective October 26, 1976, as revised by Change 1,[8] ex-

---

7. 38 C.F.R. 21.4200(g) provides:

   "(g) STANDARD CLASS SESSION. The term means the amount of time a student is required, in a regular quarter or semester, to spend in class per week for one quarter or one semester hour of credit. Normally, a standard class session is not less than 1 hour (or 50 minute period) of academic instruction, 2 hours of laboratory training, or 3 hours of workshop training".

8. DVB Circular 20–77–16, February 9, 1977, provides:

   "MEASUREMENT FOR PAYMENT PURPOSES VA REGULATION 14272(D)

   "1. Effective October 26, 1976, VA Regulation 14272(D) was amended to include: In no case will a course be measured as full-time when less than 14 standard class sessions per week (or 12 standard class sessions if 12 credit hours is full time at the school) are required. (See VA Regulation 14200(G) which defined 'standard class session'). Likewise, a proportionate number of weekly standard class sessions is required to support an assignment of part-time training.

   "a. In addition to meeting the credit-hour measurements of VA Regulation 14270 (C), a course must also schedule a sufficient number of contact hours to support the assigned training time. Weekly contact hours, excluding any break periods, should be used to determine training time measurement if individual class periods are longer than a standard class session. Equivalent standard class sessions for measurement can be obtained by dividing the number of weekly contact hours by the length of a standard class session.

   "b. If a school conducts a term shorter than a normal quarter or semester, weekly contact hours of instruction must be increased correspondingly for measurement as an accelerated course under the provisions of VAR 14272(D).

   "2. The above principle applies to all collegiate undergraduate courses measured on a credit-hour basis regardless of whether they are offered pursuant to a standard semester or standard quarter system. Accordingly, measurement of all applicable courses for academic terms beginning on or after October 26, 1976, are subject to this regulatory

provision. Where applicable, overpayments should be created from the beginning of such terms and school liability considered. (Notwithstanding the effective date of this regulatory amendment, this change merely reflects a certification of longstanding Veterans Administration measurement policy rather than a new policy).

   "3. Although IHL's should still certify credit hours for enrollment, the VA must be able to determine the number of standard class sessions which are scheduled if this may result in reduced training time. Accordingly, *all IHL'S* should be put on notice that when the equivalent of a standard class session per week for each credit hour granted is not scheduled, the enrollment certification should also report the number of such weekly sessions or the equivalent contact time. This may even require the need to differentiate between academic and laboratory instruction if clock hours are merely reported instead of standard class sessions (e. g., a chemistry course may be given for 3 credits, involve 4 hours of attendance, but yet should only be reported as entailing 3 standard class sessions if there is a 2-hour weekly lab).

   "4. Since our administrative experience suggests that the measurement of some courses offered by colleges and universities across the nation may be directly affected by this regulatory amendment, special attention should be given to this matter. The amount of contact time scheduled for credit hours granted should be checked during compliance surveys. A spot check of several unit courses against the catalog or most current class schedule will generally suffice unless discrepancies are found or there is some other basis for suspecting a problem in this area.

   "5. *This instruction will necessitate a change to PG 21–1, section M–45, which will be forthcoming.*

   "DVB Circular 20–77–16, Change 1
   MEASUREMENT FOR PAYMENT PURPOSES VA REGULATION 14272(D)

   "1. This change is necessary to exclude certain courses from the contact-hour requirements of the circular. Also changed is the earliest date from which overpayments could be considered in accordance with the *measurement criteria of the circular.*

pands on the meaning of Regulation 38 C.F.R. 21.4272(d), in that it provides a means of measuring courses for payment purposes. This guideline requires a proportional number of standard class sessions to support the measurement of a full-time as well as part-time course. The Administrator notes in the circular that this rule has been a long-standing V.A. measurement policy. Finally, the guideline states that the V.A. will classify as independent study those courses which are not supported by a sufficient number of class sessions per week (e. g., undergraduate seminars).

In the instant case, with the exception of the Evergreen State College (hereinafter "Evergreen State"), the curriculum at each protesting school is offered on a largely traditional basis (i. e., one semester hour of credit is given for each hour of classroom instruction provided per week in a term). As to those courses, there is no controversy. Some courses at these schools, however, do not entail a sufficient number of hours of classroom instruction each week. It is in regard to these courses that the controversy in this lawsuit arises. And, in the case of Evergreen State, there is little or no classroom instruction to support the semester hours offered. Instead, Evergreen State offers a program of individual "learning contracts". That is, each student designs his own course of study for each quarter and if the "contract" is approved, the school provides full-time credit. The school offers no set classroom courses. Indeed, there is no requirement that the student actually pursue his studies on campus. Additionally,

because presence on campus (much less class attendance) is not required of a full-time student at Evergreen State, there is not even a means of determining the number of hours a student actually devotes to his "learning contract."

A few Evergreen State "learning contracts" which were submitted as Exhibits in the district court illustrate the deficiencies identified above. For example, one student obtained two quarters of credit for "Inter-Cultural Research in Brazil." That is, the school certified that this student, who traveled on his own in Brazil for six months, was enrolled in a full-time institutional course of study. Another student received three quarters of full-time credit for hiking through Mexico and Guatemala to help him revise his guide book on Mexico and to provide him with an opportunity to write a book on backpacking. A third student received full-time credit for three quarters for skiing and rafting in Idaho. The V.A. never determined what categories Evergreen State's courses fell into as it was enjoined from making those determinations.

This case was filed by the appellees and certain veterans to prevent the enforcement of the regulations and the circular by the Administrator as to appellees' schools.

## I. JUDICIAL REVIEW

■ The V.A. contends that judicial review of the cited regulations and circular is precluded by 38 U.S.C. § 211(a). This exact issue was decided contrary to the contention

"2. DVB Circular 20–77–16 is changed as follows:

"Page 1

"Paragraph 1

"Lines 5 and 6: Delete '(See VA Regulation 14200(G) . . . class session').

"Line 8: After 'training', add

" 'In effect, VA Regulation 14200(G) defines the term 'standard class session' as the amount of time a student is scheduled in the school's standard length term to spend in class per week for one quarter or one semester hour of credit. Normally, but not necessarily, a standard class session is not less than 1 hour (or 50-minute period) of academic instruction, 2 hours of laboratory training or 3 hours of workshop. (It follows that the

length of a standard class session is determined by the school's own academic practices which establish a normal length, not an average length, for each type or class session based on the majority of the school's regularly scheduled programs. Generally, special class schedules for independent study programs, so-called accelerated programs, and night programs should not be considered in determining the length of a standard class session).

"Paragraph 2

"Line 8: Delete 'such terms' and insert 'the first term after school officials are put on notice, as provided in paragraph 3,'

"Line 10: Delete 'certification' and substitute 'clarification'."

of the V.A. by the Sixth Circuit Court in *Wayne State University v. Cleland,* 590 F.2d at 631–632, and by the Eighth Circuit Court in *Merged Area X (Ed.) v. Cleland,* 604 F.2d at 1078, in a well-reasoned discussion of the identical regulations and circular involved here, which we approve as being applicable to and dispositive of this question in our case. Both of those courts concluded, as we do, that 38 U.S.C. § 211(a) was designed to prevent judicial review of decisions of the V.A. on individual claims, but that it would not bar judicial review of constitutional challenges to provisions of the veterans benefits legislation and regulations issued thereunder, and that the statute would not preclude judicial review of challenges to the Administrator's authority to promulgate regulations. The Supreme Court held in *Johnson v. Robinson,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) that § 211(a) did not bar judicial review of constitutional challenges to provisions of the veterans benefits legislation.

Accordingly, we hold that the challenge by the appellees to the authority of the Administrator to issue the regulations and the circular involved in this case is not precluded from judicial review by 38 U.S.C. § 211(a).

## II. THE MERITS

On the merits, the facts show that the Administrator notified the appellee schools that he intended to review their courses of study to determine whether they were institutional, independent study, or some other type of course. Also, the Administrator stated that he would make a determination as to the measurement of each veteran-student's course (full-time or part-time), based upon his "seat-time rule" (i. e., one class hour of instruction per week for each se-

mester hour of credit), where the veteran's course is found to be institutional. Furthermore, the Administrator indicated that, pursuant to the Act, the level of payment to be made to a student-veteran would be based upon the Administrator's foregoing determinations. This notice precipitated the filing of this suit by the schools and certain veterans in an effort to prevent the Administrator from enforcing the regulations and the circular. Central to appellees' case on the merits are their contentions that (1) in the absence of an express statutory grant of authority to the Administrator, determinations as to the type and measurement of undergraduate courses at the appellees' schools are decisions which are reserved by 38 U.S.C. § 1782 to the educational institutions; and (2) that 38 C.F.R. 21.4200(g) and 21.4272(d), and DVB Circular 20–77–16, which interpret 38 U.S.C. § 1788(a)(4), are beyond the Administrator's authority.

█ The district court agreed with the first argument of appellees in holding that there is no express delegation of authority to the V.A. to set weekly class attendance requirements with respect to full-time college level courses offered on a quarter or semester hour basis which lead to a standard college degree, and that § 1782 requires the V.A. to accept a school's definition of full-time study.[9] In so holding, the district court expressed concern about preserving academic freedom of the schools in the "organization, content and the style of educational programs." We appreciate the merits of academic freedom when kept within due bounds, but recognize that it has its limitations. No amount of academic freedom can authorize the schools to take over, manage or direct the veterans' educational program that has been clearly placed in the hands of the V.A. Administrator by

---

9. Section 1782, Title 38 U.S.C. provides that:
   "No department, agency, or officer of the United States, in carrying out this chapter, shall exercise any supervision or control, whatsoever, over any State approving agency, or State educational agency, or any educational institution. Nothing in this section shall be deemed to prevent any department, agency, or officer of the United States from

exercising any supervision or control which such department, agency, or officer is authorized by law to exercise over any Federal educational institution or to prevent the furnishing of education under this chapter or chapter 34 or 35 of this title in any institution over which supervision or control is exercised by such other department, agency, or officer under authority of law."

38 U.S.C. § 210(c)(1) and other provisions of the Act. The Act not only authorizes him to administer and manage the program, but also places the duty and responsibility upon him to do so. He is authorized by the statute to make all rules, regulations, guidelines, interpretations and orders necessary to carry out the program. It should be kept in mind that the G.I. educational program was enacted by Congress for the benefit of the veterans and not the schools, although in its application the schools do receive indirect benefits from it through the veterans. These secondary benefits are not sufficient to vest the administration of the program in the schools instead of in the Administrator.

The district court also agreed with appellees' second argument that the regulations and circular were beyond the authority of the Administrator and were, therefore, invalid except as to courses outside the scope of 38 U.S.C. § 1788(a)(4).

In determining whether the regulations and circular were within the authority delegated by Congress to the Administrator and therefore valid, we rely on the guidelines set forth by the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), as follows: (1) the regulations must not exceed the statutory authority; (2) they may not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; and (3) the agency must follow necessary procedural requirements in the promulgation of the regulations.[10] As to the first two of the these requirements, we agree with the various arguments of the V.A. in this case that in addition to being authorized by 38 U.S.C. § 210(c)(1), the regulations and circular are fully consistent with the law. Section 1788(a)(4) of Title 38, U.S.C., by its own terms, seeks to establish the basis for measuring an institutional course of study. In 38 U.S.C. § 1681(b), Congress defined what it meant by institutional training (i. e., a course of study at an educational institu-

tion). Nowhere in the statute, however, did Congress define the words "quarter or semester hour" which appear in Section 1788(a)(4). Regulations 38 C.F.R. 21.-4200(g) and 21.4272(d) and DVB Circular 20–77–16, as revised, therefore, simply constitute the Administrator's attempt to interpret these words. 38 C.F.R. 21.4272(d) provides a formula for converting a non-standard term of institutional education into its equivalent in quarter or semester hours. This regulation also interprets the term "full-time course" as defined by Congress in 38 U.S.C. 1788(a)(4).

The regulations and circular also conform to the distinctions Congress made in the Act as to various types of approved under-graduate courses (e. g., institutional, cooperative, and independent study). That is, under Section 1681(b) an institutional course must entail instruction in-residence only while a cooperative course under Section 1782(a)(2) requires a combination of in-residence and on-the-job training. And, under Section 1782(e), no residential training is required for independent study.

By contrast, the schools and students in this case contend that courses which do not meet in residence (which the Administrator would probably classify as independent study and for which only tuition and fees would be payable), should be considered institutional if the schools merely say that they are and that such courses should be deemed full-time if the schools are willing to grant the students 12 semester hours of credit. The district court adopted this view. The lower court's holding renders meaningless the distinctions Congress made among the types of courses. Under the independent study provision, student-veterans pursuing an independent study program generally receive benefits covering tuition and fees only. Under the decision of the district court in this case, however, a veteran whose school chooses to characterize his study as resident training even though it requires little more contact with a faculty member or his classmates than those gener-

---

10. Procedural regularity in the promulgation of the regulations and circular was not challenged by appellees and therefore requires no further discussion.

ally understood to be pursuing independent study, would receive full-time benefits, including a full allowance for subsistence.

Title 38 U.S.C. § 1780(g) authorizes the Administrator to determine the eligibility of a veteran for benefits under the Act, and that Section, together with 38 U.S.C. § 1788(b), authorize the Administrator to determine whether attendance by a veteran in a course is part or full time. These determinations are critical to a determination of the appropriate level of benefits payable under the Act. In sum, the plain meaning of these provisions is that the Administrator is empowered to determine the applicable level of education benefits payable to an eligible veteran, based upon his determinations of both the type of course pursued by the veteran and the amount of time the veteran devotes to his studies.

The challenged regulations and circular simply interpret the terms used in Section 1788(a)(4). That is, the words "institutional undergraduate course offered by a college or university on a quarter- or semester-hour basis" appearing in Section 1788(a)(4) of the Act are interpreted by the Administrator to mean under-graduate studies where a student is enrolled in a course which gives one hour of credit for each class hour per week that the course meets in a semester or quarter term. This is consistent with usage in most colleges. In short, the Administrator has interpreted Section 1788(a)(4) of Title 38 U.S.C. to mean that a student enrolled in an undergraduate course may receive full or partial education benefits depending upon the number of semester hours he takes per term so long as classes in his course meet at least one hour per week for each semester hour of credit received by the student. Thus, under the Administrator's regulations, if a student's course of study does not entail any set classroom instruction, the student's course is not an institutional one and the measure of such a course under Section 1788(a)(4) is irrelevant. These interpretations by the Administrator are reasonable and logical and do not change the meaning of 38 U.S.C. § 1788(a)(4), but, on the other hand, explain

it in easy-to-understand terms that facilitate the administration of the veterans' education program.

The appellees cite legislative history of 38 U.S.C. § 1788 and its amendment by Congress in 1974 in support of its argument that Congress intended to leave it up to the institutions to decide what a "semester hour" of credit is in full-time institutional courses leading to a degree in order for a veteran to qualify for full-time veterans' educational benefits. We disagree. The 1974 amendment was limited to remedial or vocational training courses not leading to a degree. As to those remedial and training courses, Congress allowed undergraduate institutions the option of granting "clock hour" or "semester hour" or "quarter hour" credit to the veteran student. This did not relieve the schools of the obligation of providing "full time" institutional instruction to a veteran, as that term is defined by Congress in 38 U.S.C. § 1788, in courses leading to a degree, if the veteran is to receive full-time benefits under the Act. The contention of appellees that since the 1974 Amendment allowed the schools to determine what is a "quarter hour" or a "semester hour" in remedial and vocational training courses, they should be allowed to make the same determination in full-time institutional courses leading to a standard college degree is unpersuasive. The legislative history and the 1974 amendment do not support this argument. As stated above, Congress defined a full-time undergraduate course leading to a standard college degree offered by an institution on a quarter hour or semester hour basis in 38 U.S.C. § 1788(a)(4). An institution cannot circumvent or undermine the statute by arrogating unto itself the power to determine what is a quarter hour or a semester hour in its institutional courses. No authority exists for such procedure. The statute must be complied with if a veteran is to receive full benefits under the Act.

The appellees contend that the regulations and circular violate 38 U.S.C. § 1782 which provides that the V.A. and other

federal agencies shall not exercise supervision or control over educational institutions in the course of administering the education program for veterans. We do not agree. Neither the regulations nor the circular show any attempt by the Administrator to supervise or control the schools. The schools are free to offer whatever courses they desire to whomever they wish. Also, the student-veteran may enroll in any course he chooses.

The effect of the regulations and circular is to require the Administrator to pay the veteran an education assistance allowance at the rate authorized by Congress, based upon the type of course and the amount of time a student-veteran devotes to his studies. The schools and some of their students seem to want full V.A. benefits for the student-veterans, regardless of whether the students have any classroom instruction. Congress did not enact such a program. We conclude that the regulations and the circular do not violate 38 U.S.C. § 1782.

We hold that the tests for determining the validity of an agency regulation set forth by the Supreme Court in *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), have been complied with by the Administrator in promulgating the regulations and the circular in that they do not exceed the authority delegated to him by Congress, and they are not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. We hold further that they are valid and should be enforced. The Sixth Circuit Court reached the same conclusion in *Wayne State University v. Cleland*, 590 F.2d at 633-634.

In *Merged Area X (Ed.) v. Cleland*, 604 F.2d at 1080, the Eighth Circuit Court approved the minimum twelve semester hour requirement in the regulations for all under-graduate students who seek to obtain full-time veterans benefits, saying:

"As stated, by comparing the provisos in § 1684(a)(4) [of the 1970 law] and § 1788(a)(4), it is clear the current law intends to impose the twelve hour minimum on both subparts (A) and (B).

"For the above-stated reasons, we agree with the Sixth Circuit that Congress mandated a twelve semester hour minimum for all undergraduate students who seek to obtain full-time veterans benefits. Therefore, the VA is merely including Congress's mandate in its regulations by requiring twelve semester hours and is not exceeding its statutory authority." (Footnote omitted). 604 F.2d at 1080

The court also held in that case that the V.A. had the authority to define the term "semester hour" set forth in 38 U.S.C. § 1788(a)(4).

For all of the foregoing reasons, we agree with the district court that we have jurisdiction to review the regulations and the circular of the V.A. and affirm the judgment in that regard. However, we do not agree with the district court that the Administrator exceeded his authority in promulgating the regulations and circular and that they are valid only as to courses outside the scope of 38 U.S.C. § 1788(a)(4).

The district court did not reach nor decide the constitutional challenges of appellees to the statute and the regulations. Therefore, the case must be remanded for a determination of those constitutional issues.

Accordingly, we reverse the judgment and order of the district court and hold that the Veterans Administration has not exceeded its statutory authority in promulgating V.A. regulation 14272(D), 38 C.F.R. § 21.4272(d) (1977), as amended 41 Fed.Reg. 14398 (1976); V.A. Regulation 14200(G), 38 C.F.R. § 21.4200(g) (1977); D.V.B. Circular 20–77–16, dated February 9, 1977, revised by Change 1, April 21, 1977, and that the regulations and circular are valid and should be enforced.

The judgment of the district court is affirmed in part, reversed in part, and the

case is remanded for further consideration consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.